OPINION OF THE COURT
David Friedman, J.
Plaintiff, Pluma D. Keith, suffered an injury to the left eye as a result of being mugged. On March 4,1993, he sought treatment from an ophthalmologist, Dr. Elaine Schulman, of the Central Medical Group, P. C. (CMG). Dr. Schulman operated on plaintiffs eye on March 26, 1993. After this surgery it was apparent that plaintiff was blind in his left eye. In an attempt to treat the blindness, Dr. Schulman operated again upon plaintiff. The operation failed, however, to restore plaintiffs vision.
Plaintiff continued under the care of Dr. Schulman and CMG. His last actual visit with Dr. Schulman was on August 23, 1993. Thereafter, plaintiff saw other doctors at the group. Such visits related to eye care but were not for the purpose of treating the blindness of plaintiffs left eye. While Dr. Schulman did not see plaintiff after August 23, 1993, it is uncontroverted that at such time she sent him for a consultation to Dr. Kupersmith, a neuro-ophthalmologist at the New York University Medical Center.
After an unexplained cancellation in September, the consultation took place on November 23, 1993. Dr. Schulman, at her examination before trial, explained that she sent plaintiff for the consultation in order “to leave no stone unturned in [her] investigation of why this visual loss occurred.” The referral slip from Dr. Schulman to Dr. Kupersmith stated that he was not to bill plaintiff directly, that he had to obtain authorizations from CMG before performing any services other than the consultation, and that he had to report his findings to the referring medical group, that is CMG.
In fact, after the consultation Dr. Kupersmith sent a report dated November 25,1993 to Dr. Schulman. While the testimony varies, Dr. Schulman did at one point in her deposition concede *424 that she spoke to Dr. Kupersmith about his evaluation of plaintiff and that she reviewed the report of November 25. The records of CMG, including a November 25, 1993 file entry, are consistent with such testimony.
Plaintiff commenced this action on March 26, 1996 against defendants alleging that Dr. Schulman was negligent in performing the surgery and failing to recognize damage to his optic nerve. Subsequently, by order of a different Judge dated September 8, 1997, plaintiff was granted leave to serve an amended complaint asserting a derivative claim on behalf of his wife. Defendants in their answer to both the original and amended complaints asserted a Statute of Limitations defense.
Defendants now move for an order pursuant to CPLR 3211 (a) (5) dismissing this action as time barred. While defendants concede that they treated plaintiff’s left eye until August 23, 1993, they contend that the 21/2-year Statute of Limitations provided by CPLR 214-a expired on January 23, 1996 — a date before this action was commenced. Plaintiff, relying on the continuous treatment doctrine, asserts that the Statute of Limitations did not expire before commencement of the action. Plaintiff claims that treatment continued through at least November 23, 1993, the date on which he saw Dr. Kupersmith via the referral of Dr. Schulman.
A medical malpractice action must be commenced within 2V2 years from the date “of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to said act, omission or failure” (CPLR 214-a). Thus under the continuous treatment doctrine “the time in which to bring a malpractice claim is stayed ‘when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint’ ” (McDermott v Torre, 56 NY2d 399, 405).
While phrased by courts in varying terminology, the primary premise of the doctrine has always been to permit a patient to conclude treatment without needing to consider commencement of medical malpractice litigation. Young v New York City Health & Hosps. Corp. (91 NY2d 291) states that the doctrine effectuates the view that a patient is not required to interrupt corrective medical treatment by a physician and undermine the continuing trust in the physician-patient relationship in order to timely commence a medical malpractice action. On the other hand, Nykorchuck v Henriques (78 NY2d 255, 258-259) pointed out that while it is in the patient’s best interest that *425 an ongoing course of treatment be continued rather than interrupted by a lawsuit, none of the policy reasons underlying the continuous treatment doctrine justify a patient’s delay in bringing suit where there are no continuing efforts by a doctor to treat a particular condition.
Stripped to its essentials, the issue presented at bar is whether a referral by one doctor to another for a one-time consultation constitutes continuous treatment by the referring doctor. Stated otherwise did plaintiff’s visit to Dr. Kupersmith on November 23, 1993, and an entry in CMG’s files on November 25, 1993, constitute continuous treatment by defendants. In my view the policy concerns underlying the continuous treatment doctrine supports its application here.
As previously indicated, Dr. Schulman at her deposition explained that she referred plaintiff to Dr. Kupersmith because she wanted “to leave no stone unturned in [her] investigation of why this visual loss occurred.” Dr. Schulman’s referral slip is also particularly supportive of the view that plaintiff remained under her care. The slip reveals that Dr. Kupersmith was seen as a consultant, that he was not to bill plaintiff directly, that he was to report his findings to CMG and that he needed CMG’s authorization before performing any service beyond the requested consultation.
These factors lead to the inescapable conclusion that at least until November 23, 1993 there existed a doctor-patient relationship vis-á-vis Dr. Schulman’s treatment of plaintiff’s left eye and that in fact such treatment was continuing. It thus follows from the continuous treatment doctrine that up to November 23, 1993, and perhaps even November 25, 1993, plaintiff could not be expected to commence a lawsuit and interrupt defendants’ efforts to investigate, treat and correct his blindness. Consequently, defendants’ motion to dismiss based on their Statute of Limitations defense must be denied (cf., Ganapolskaya v V.I.P. Med. Assocs., 221 AD2d 59). The instant scenario must of course be distinguished from a situation where a doctor refers a patient to a specialist for treatment and abdicates his role as the patient’s treating physician (see, Swartz v Karlan, 107 AD2d 801).
While not completely on point, support for this result is found in Adams v Frankel (242 AD2d 595). In Adams, defendant doctor referred plaintiff to a radiologist in order to have a mammography performed for diagnostic purposes. In finding that there was continuous treatment, the Appellate Division stated (at 595), “The radiologist’s findings were disclosed only to the *426 [doctor], who reviewed and evaluated the findings and informed the plaintiff of the results of the mammography approximately one month after the test. Under these circumstances, the court properly concluded that the plaintiff remained under the [doctor’s] care and treatment while she was awaiting the mammography results (see, Young v New York City Health & Hosps. Corp., 238 AD2d 174; Bartolo v Monaco, 202 AD2d 535; Miller v Rivard, 180 AD2d 331; cf., Robertson v Bozza & Karafiol, 242 AD2d 613)”.*
This determination does not, however, resolve the matter in its entirety. The complaint as amended also asserts a derivative cause of action for loss of services on behalf of plaintiffs wife. This cause of action was interposed on September 2, 1997, more than 2V2 years after November 1993. Thus, the issue that emerges is whether the derivative claim relates back to the date on which the complaint was originally served or must be measured for Statute of Limitations purposes from the date the amended complaint was served. In Clausell v Ullman (141 AD2d 690 [2d Dept]) and Laudico v Sears, Roebuck & Co. (125 AD2d 960 [4th Dept]) the Courts held that a spouse’s derivative claim cannot be deemed to “relate back” to the date that the main action was commenced. That of course means that plaintiffs claim is time barred. While there is appellate authority to the contrary (Anderson v Carney, 161 AD2d 1002 [3d Dept]), this court is bound by the Second Department’s holding in Clausell (see, Mountain View Coach Lines v Storms, 102 AD2d 663, 664).
It should also be noted that to the extent that a Judge of this court permitted plaintiff to serve an amended complaint containing a cause of action on behalf of the wife, there is no indication that a determination was made with respect to the Statute of Limitations defense. Significantly, the court’s order does not mention the issue. Additionally, defendants served an amended answer containing a defense of the Statute of Limitations, which plaintiffs never sought to strike. It would appear, therefore, that the parties themselves operated under the assumption that the issue remained unresolved.
In sum, the motion is denied insofar as it seeks dismissal against plaintiff. However, that branch of the motion seeking to dismiss the cause of action of plaintiffs wife is granted.

 The Appellate Division relies on Young v New York City Health & Hosps. Corp. (238 AD2d 174, supra) which was reversed (91 NY2d 291, supra). Such reversal does not, however, seem to undermine the holding of Adams (supra).