[644 NYS2d 735]

Irina Ganapolskaya, Appellant, v V.I.P. Medical Associates et al., Respondents.

First Department, June 27, 1996

---

### APPEARANCES OF COUNSEL

*Noah Witty* of counsel, New York City *(Cyrus B. Adler,* attorney), for appellant.

*Betty Brutman* of counsel, New York City *(Wolf & Fuhrman,* attorneys), for V.I.P. Medical Associates, respondent.

*Elliott J. Zucker* of counsel, New York City *(Gordon & Silber, P. C.,* attorneys), for A. Munoz, respondent.

### OPINION OF THE COURT

Tom, J.

The issue presented on this appeal concerns whether the $2^1/_2$-year limitations period for a medical malpractice action (CPLR 214-a) is tolled while plaintiff receives emergency treatment in a hospital due to complications arising out of an abortion procedure performed by another doctor in another medical facility.

Plaintiff Irina Ganapolskaya had been diagnosed with an ectopic (tubal) pregnancy in July 1990 and on July 24, 1990, she became a patient at defendant V.I.P. Medical Associates (V.I.P.) for a therapeutic abortion, which was performed by codefendant Dr. A. Munoz. Dr. Munoz attempted a suction and curettage abortion, but subsequent laboratory analysis failed to reveal any fetal parts. As a result, V.I.P. sent letters to plaintiff, dated August 8 and August 24, 1990, stating that plaintiff should contact V.I.P. as soon as possible concerning the procedure and that it was necessary that she be reexamined posthaste.

On August 28, 1990, plaintiff returned to V.I.P., where a sonogram confirmed plaintiff's continued pregnancy. On August 31, 1990, plaintiff underwent a second abortion, which procedure commenced at approximately 2:00 P.M. Plaintiff maintains that by 3:30 P.M., she was experiencing vaginal bleeding and began to cramp; and that by 3:45 P.M., she had abdominal pain, the vaginal bleeding persisted and her blood pressure began to drop. Plaintiff avers that she passed out at

approximately 4:00 P.M., at which time V.I.P. personnel placed her in a bed and Dr. Munoz directed that an ambulance be summoned. At 5:00 P.M., nurses at V.I.P. recorded plaintiff's complaints of continued abdominal pain and vaginal bleeding and that her blood pressure had dropped to 90/50.

An ambulance arrived at V.I.P. at approximately 5:30 P.M. and subsequently transported plaintiff to Beth Israel Medical Center (Beth Israel). Dr. Munoz did not accompany plaintiff in the ambulance, but the Emergency Medical Service (EMS) was given her chart, a progress report, a copy of the operating room report, and was informed of possible internal bleeding. Plaintiff thereafter underwent an emergency laparotomy at Beth Israel to determine whether she had a perforated uterus caused by the abortion procedure. The next day, September 1, 1990, surgeons at Beth Israel operated on plaintiff in a more extensive manner, and performed a left cornual resection, aspiration of the right parovarian cyst, and a diagnostic dilation and curettage (D&C) to remove any excess blood or tissue from plaintiff's uterus. Plaintiff remained hospitalized until her discharge on September 7, 1990.

Plaintiff commenced the underlying medical malpractice action against Dr. Munoz and V.I.P. by the service of a summons and verified complaint alleging, *inter alia*, that defendants' negligence caused her to suffer a *perforated* uterus and other permanent and serious injuries. Dr. Munoz subsequently moved, and V.I.P. cross-moved, to dismiss the complaint on the grounds that plaintiff had not commenced the action within the $2^1/2$-year time limitation set forth in CPLR 214-a. Defendants argue that plaintiff's treatment terminated when she left V.I.P. and was no longer being treated by Dr. Munoz. Plaintiff contends that there was "continuing treatment" extending the limitations period to include the period in which she received emergency treatment in the hospital, and that her claim is not time barred.

After oral argument was heard, the IAS Court granted the motion and cross motion and, reluctantly, dismissed the complaint, which had been served four days beyond the limitations period if such period is measured from plaintiff's removal, by ambulance, from V.I.P. Plaintiff appeals and we now reverse.

Generally, a medical malpractice action must be commenced within $2^1/2$ years of the wrongful act complained of. CPLR 214-a provides, in pertinent part: "An action for medical * * * malpractice must be commenced within two years and six months of the act, omission or failure complained of *or last*

*treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure"* (emphasis added).

It is undisputed that the alleged negligent treatment by Dr. Munoz occurred on August 31, 1990, and that plaintiff did not commence this action until on or about March 4, 1993. Based on these dates, plaintiff's malpractice action was commenced beyond 2½ years and would be time barred. If, however, continuous treatment is found to exist for the period plaintiff was in the hospital, the statute is tolled and the instant action would be timely.

The doctrine of continuous treatment, embodied in CPLR 214-a, was first established in *Borgia v City of New York* (12 NY2d 151), and provides that the 2½-year period does not begin to run until the end of the course of treatment "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" *(supra,* at 155; *Nykorchuck v Henriques,* 78 NY2d 255, 258; *Rizk v Cohen,* 73 NY2d 98, 104; *Chaff v Parkway Hosp.,* 205 AD2d 571, 572-573, *lv denied* 84 NY2d 966). The policy which underlies the doctrine seeks "to 'maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on [the] case from onset to cure' " *(Nykorchuck v Henriques, supra,* at 258). The doctrine is predicated on "the premise that it is in the patient's best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit, because 'the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so' " *(supra,* at 258, quoting *McDermott v Torre,* 56 NY2d 399, 408).

There can be no dispute herein that plaintiff, almost in shock from blood loss when she was removed by ambulance from V.I.P., was being treated for the same "original condition or complaint" created by the alleged malpractice when she underwent two surgical procedures in two days at Beth Israel which, in all likelihood, saved her life. Further, where treatment is provided by more than one physician or health care provider, the continuing treatment by one will be imputed to the other in the presence of an agency relationship, or some other relevant association which continues the nexus between the two providers *(McDermott v Torre, supra,* at 408; *Meath v Mishrick,* 68 NY2d 992, 994; *Ogle v State of New York,* 142 AD2d 37, 40; *Diller v Munchmeyer,* 130 AD2d 868, 869, *lv*

*denied* 70 NY2d 605; *Modzelewski v Kingsbrook Jewish Med. Ctr.*, 120 AD2d 498, 499, *lv denied* 69 NY2d 603; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 214-a.03).

In our view, there is a strong nexus between the defendants, whose malpractice allegedly resulted in plaintiff's dire condition, and the treatment she received at Beth Israel, which corrected her condition and saved her life. It is clear that at the time of the emergency transfer, defendants' treatment had not been completed and that the transfer was for plaintiff to undergo further medical procedures to correct defendants' alleged malpractice and to take plaintiff out of danger. The fact that Dr. Munoz directed an ambulance be summoned to transfer plaintiff for emergency treatment, and gave EMS plaintiff's operating room report as well as full details of his procedure, and informed them of possible internal bleeding, further supports the finding that plaintiff's referral was for continuous treatment of the same related condition created by defendants' alleged acts of malpractice. This supplies a sufficient nexus between the two health care providers so as to toll the limitations period until plaintiff was discharged from the hospital (*see, Cotto v City of New York*, 99 AD2d 748). Thus, this action is timely.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about June 23, 1994, which granted defendants' motion and cross motion for summary judgment dismissing the complaint as time barred, is unanimously reversed, on the law, without costs, the motions are denied, the complaint is reinstated, and the matter is remanded for further proceedings.

ROSENBERGER, J. P., ELLERIN, RUBIN and KUPFERMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 23, 1994, reversed, on the law, without costs, the motion and cross motion denied, the complaint reinstated, and the matter remanded for further proceedings.