JACQUELINE CASEY, APPELLANT, AND RICHARD CASEY, APPELLEE,
v. MICHAEL A. LEVINE, M.D., ET AL., APPELLEES.

621 N.W. 2d 482

Filed January 12, 2001.   No. S-99-079.

Edward F. Fogarty, of Fogarty, Lund & Gross, and Karen L. Tibbs for appellant.

James A. Snowden and Thomas B. Wood, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellees Michael A. Levine, M.D., and Andrew Robertson, M.D.

Patrick W. Meyer, of Sodoro, Daly & Sodoro, for appellee Methodist Hospital.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This medical malpractice appeal presents the question whether the continuing treatment doctrine that tolls the statute of limitations against a physician should be extended to the alleged negligent acts of a hospital's nursing staff. We conclude in this case that in a malpractice claim against a hospital for the negligence of its nursing staff, the doctrine does not toll the statute of limitations past the date of the patient's discharge from the hospital.

Jacqueline Casey brought this medical and hospital malpractice claim against Michael A. Levine, M.D.; Andrew Robertson, M.D.; and Methodist Hospital, claiming malpractice following

the delivery of her ninth child at the hospital on October 27, 1995.

We granted petitions for further review from Levine, Robertson, and the hospital. We affirm the Nebraska Court of Appeals' decision reversing the district court's grant of summary judgment in favor of Levine and Robertson. We reverse, however, the Court of Appeals' decision reversing the district court's grant of summary judgment in favor of the hospital.

## BACKGROUND

On October 27, 1995, Casey prematurely delivered an infant at the hospital while under the medical care provided by Levine and Robertson. Casey was released from the hospital on October 28. She was readmitted to the hospital for complications allegedly related to that delivery on November 3 and remained in the hospital's intensive care unit for 18 days.

On November 7, 1997, Casey filed a petition alleging medical malpractice on the part of Levine, Robertson, and the hospital. The operative petition, a "corrected amended petition" which includes Richard Casey as a plaintiff, alleges that Levine and Robertson misdiagnosed and improperly treated her. She does not specifically allege that either Levine or Robertson treated her during her second admission to the hospital.

Casey alleges the following facts: In 1995, she sought the assistance of Levine and Robertson because of their expertise with problem pregnancies and because Levine had previously diagnosed her as having atypical postpartum eclampsia after the delivery of her eighth child. Preeclampsia is a potentially life-threatening complication in pregnant women associated with protein in the urine, hypertension, and edema in the face, hands, and feet. If left untreated, it can progress to eclampsia, which is characterized by coma and convulsive seizures in the pregnant woman. Casey's symptoms did not develop until after the delivery of her child.

On October 28, 1995, the day after her delivery, Casey reported to Robertson that she was experiencing swelling in her hands and face, headaches, and visual changes. Casey stated to Robertson that she believed she was experiencing the same postpartum symptoms that had accompanied her complications fol-

lowing the delivery of her eighth child. She alleges she asked for a diuretic, which Robertson prescribed but the nurses failed to administer, and further that the hospital staff failed to "evaluate, monitor and treat" her with ordinary and reasonable care.

Casey asked Robertson to keep her in the hospital while she was experiencing these symptoms, and Robertson said he would authorize another day. However, a hospital nurse, Eileen Eckert, informed Casey that her insurance company would not approve another day. Casey was released from the hospital on October 28, 1995.

Three nights after her release, Casey's family rushed her to the hospital's emergency room for high blood pressure and severe headaches. Casey alleges that Levine also failed to appropriately treat her condition at that time. Then, on November 3, 1995, she was admitted to the intensive care unit of the hospital, where she remained until November 20. A neurologist was not consulted until November 11, according to Casey.

Casey alleges that she developed eclampsia and suffered grand mal seizures, loss of vision, and alteration in the function of the right side of her body as a result of her untreated hypertension.

The hospital answered, generally denying the allegations. Levine and Robertson answered, generally denying the allegations and further alleging that the case was barred by the statute of limitations.

Levine and Robertson moved for summary judgment on the grounds that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. The hospital filed a motion for summary judgment on the ground that Casey was unable to prove a prima facie case based on the pleadings, depositions, and other discovery to date.

During the summary judgment hearing, the court granted leave to the hospital to amend its answer to affirmatively assert the statute of limitations defense. Casey offered exhibit 6, which states that she had been seen at the hospital under the direction of Levine and Robertson at all times and that her hospitalization under their care ended November 20, 1995. A hospital record was attached in support of her statement showing Levine as the admitting physician and Robertson as an attending physician.

The district court granted summary judgment in favor of all three defendants after finding that the continuous treatment doctrine did not apply and that, therefore, Casey's petition was filed outside of the 2-year statute of limitations for medical malpractice.

The Court of Appeals on review concluded that there were genuine issues of material fact as to whether Casey's treatment by Levine, Robertson, and the hospital continued until her second discharge on November 20, 1995. The Court of Appeals therefore reversed the district court's grant of summary judgment and remanded the cause for further proceedings.

## ASSIGNMENTS OF ERROR

In petitioning for further review, Levine and Robertson assign that the Court of Appeals erred in (1) failing to determine whether Casey's subsequent treatment was related to the allegedly wrongful acts or omissions of both Levine and Robertson, as required by *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994), and (2) concluding that Casey's affidavit stating that she was under the care of Levine and Robertson until November 20, 1995, and the hospital record showing Levine as the admitting physician and Robertson as the attending physician were sufficient to demonstrate that Levine and Robertson actually treated Casey at any time after November 3, 1995.

The hospital assigns that the Court of Appeals erred in applying the continuing treatment doctrine to the hospital's nursing staff when Casey alleged no specific acts of negligence on the hospital's part after Casey's initial discharge from the hospital.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *City State Bank v. Holstine*, 260 Neb. 578, 618 N.W.2d 704 (2000); *Baye v. Airlite Plastics Co.*, 260 Neb. 385, 618 N.W.2d 145 (2000).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against

whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Prochaska v. Douglas Cty.*, 260 Neb. 642, 619 N.W.2d 437 (2000); *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000).

## ANALYSIS

Casey contends that the statute of limitations for her medical malpractice claims against Levine, Robertson, and the hospital was tolled until her second discharge from the hospital on November 20, 1995.

The hospital has elected not to come under the provisions of the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Reissue 1993, Cum. Supp. 1994 & Supp. 1995). The doctors alleged that Casey's petition is barred under either Neb. Rev. Stat. § 25-222 (Reissue 1995) or § 44-2828. The record does not indicate whether the doctors have elected to come under the Nebraska Hospital-Medical Liability Act. The wording, however, of §§ 25-222 and 44-2855 is essentially the same. Therefore, we analyze Casey's claims against both the doctors and the hospital under § 25-222, which provides in part:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action[.]

Consequently, Casey's petition, filed on November 7, 1997, more than 2 years after her initial discharge from the hospital on October 28, 1995, was filed out of time unless the statute of limitations was tolled.

The Court of Appeals correctly noted that Nebraska has adopted the continuing treatment doctrine in medical malpractice actions. In fact, Nebraska has merged this doctrine with the occurrence rule. In *Healy v. Langdon*, 245 Neb. 1, 5, 511 N.W.2d 498, 501 (1994), we held: "In medical malpractice cases, the period of limitations or repose begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed."

The Court of Appeals determined that

on this record, it is reasonable to conclude, for statute of limitations purposes, that a genuine issue of material fact exists as to whether Casey was subjected to continuing medical treatment for her previously existing complaints by Levine, Robertson, and Methodist Hospital personnel until her discharge from Methodist Hospital on or about November 20, 1995.

*Casey v. Levine*, No. A-99-079, 2000 WL 558220 at *3 (Neb. App. May 2, 2000) (not designated for permanent publication).

## METHODIST HOSPITAL

The hospital contends that the doctrine of continuous treatment should not be applied to it because there are no allegations of negligence on the part of the nursing staff during Casey's second hospitalization from November 3 through 20, 1995.

■ Hospitals are generally responsible for the acts of their agents via vicarious liability and respondeat superior. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998).

■ The proper measure of the duty of a hospital to a patient is the exercise of that degree of care, skill, and diligence used by hospitals generally in the community where the hospital is located or in similar communities. *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992).

In *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990), we held that hospital staff members lack authority to alter or depart from an attending physician's order for a hospital patient and lack authority to determine what is a proper course of medical treatment for a hospitalized patient. We have, however, held hospitals, on occasion, liable for the negligence of their nurses. See *Critchfield v. McNamara*, 248 Neb. 39, 532 N.W.2d 287 (1995) (holding as matter of law that nurses had duty to report medically significant changes in condition of patient without delay to attending physician and concluding that hospital's failure to do so created issue of fact on causation); *Miles v. Box Butte County, supra* (concluding there was issue of fact whether nurse's negligent interpretation of fetal heart monitor tracings had caused doctor's failure to consult with obstetrician for second opinion, thereby causing injury

to infant). Even so, we have never applied the continuing treatment doctrine to hospitals for the negligence of their nursing staff. When this court first adopted the continuing treatment doctrine in 1941, we stated that the purpose for the exception to the statute of limitations was to aid both patients and physicians:

> [I]t is just to the physician and surgeon that he [or she] may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery. The [continuing treatment exception] is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations should begin to run when the treatment ceased.

*Williams v. Elias*, 140 Neb. 656, 662-63, 1 N.W.2d 121, 124 (1941).

■ It is apparent that allowing a physician an opportunity to correct any malpractice and not disrupting the physician-patient relationship are the primary considerations underlying the continuing treatment doctrine in Nebraska. *Id.* See, also, *McDermott v. Torre*, 56 N.Y.2d 399, 408, 437 N.E.2d 1108, 1112, 452 N.Y.S.2d 351, 355 (1982) ("the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure [and] implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so"). It is the trust relationship that may make discovery of a claim difficult. See *Miller v. United States*, 458 F. Supp. 363, 366 (D. Puerto Rico 1978) ("[t]he rationale for the [continuing treatment doctrine] is the protection of the confidential physician-patient relationship . . . as well as the fear that the treating physician, 'knowing of his actionable mistake, might be able to conceal it from his patient or continuously to lull the patient into failing to institute suit within the ordinarily permissible time period' ").

Neither policy consideration, however, is applicable to this case. In the few cases where courts have considered the application of the continuing treatment doctrine against hospitals for the negligence of their nursing staff, the statute of limitations either has not been tolled or has not been tolled past the date of the patient's discharge from the hospital. See, e.g., *Borgia v. City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (1962) (tolling statute of limitations for over 1 year against hospital for negligence of its nurses and doctors where infant was never released from hospital); *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 472 S.E.2d 778 (1996) (tolling statute of limitations against hospital for nurses' negligence until corrective surgery was performed in case where patient was in hospital's continual confinement). See, also, *Dunagan v. Shalom Geriatric Center*, 967 S.W.2d 285 (Mo. App. 1998) (declining to apply continuing treatment doctrine to nursing home facility for injuries allegedly caused by facility's nursing staff and noting that in Missouri, doctrine is only applicable where single physician has provided continuing treatment, not where entity has provided continuing care).

Some courts, however, have applied the continuing treatment doctrine against hospitals when the alleged malpractice involved the hospital's physicians. See, e.g., *Ganapolskaya v. V.I.P. Med. Associates*, 221 A.D.2d 59, 644 N.Y.S.2d 735 (1996) (tolling statute of limitations where hospital's physician negligently performed abortion and patient was then transferred to another hospital in order to save her life); *Neureuther v. Calabrese*, 195 A.D.2d 1035, 600 N.Y.S.2d 526 (1993) (applying doctrine of continuing treatment against hospital where hospital engaged in 7 years of corrective treatments after negligent surgery which damaged patient's urinary tract).

In order to toll the statute of limitations against a hospital, however, most courts require that there be an ongoing physician-patient relationship for the continuing treatment doctrine to apply. See, e.g., *Adam v. Park Ridge Hosp.*, 261 A.D.2d 862, 690 N.Y.S.2d 381 (1999) (concluding patient's subsequent physical therapy at hospital for injuries sustained when patient fell from hospital table after colonoscopy performed by hospital physician was renewal of treatment, not continuation of treatment,

because patient failed to raise issue of fact whether there was mutual expectation of additional treatment following her discharge from hospital); *Young v. New York City Health & Hosp.*, 91 N.Y.2d 291, 296, 693 N.E.2d 196, 199, 670 N.Y.S.2d 169, 172 (1998) (explaining that generally, "continuous treatment" requirement could not be extended past patient's last visit connected with his or her condition unless further care or monitoring is explicitly anticipated by both physician and patient); *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 138 (N.D. 1990) (declining to adopt the continuing treatment doctrine where, after surgery, physician had only written prescription for patient and had not examined her because "[t]he continuing treatment concept is premised upon an ongoing and continuous relationship between patient and physician").

Moreover, courts also require that the physician be a hospital employee before tolling the statute of limitations under the continuing treatment doctrine. See, e.g., *Meier v. Huntington Hosp. Ass'n*, 186 A.D.2d 637, 588 N.Y.S.2d 421 (1992) (concluding that plaintiff's subsequent admission to hospital at direction of her attending physician did not toll statute of limitations against hospital for negligent diagnostic services; readmission was renewal rather than continuation of hospital-patient relationship). But see, *Wehrman v. U.S.*, 830 F.2d 1480 (8th Cir. 1987) (applying doctrine against Veterans' Administration hospital where patient had been treated by several doctors from facility for same condition and had repeatedly been advised to forgo surgery); *Henderson v. Marx*, 251 A.D.2d 988, 674 N.Y.S.2d 247 (1998) (concluding continuing treatment doctrine could be asserted against hospital for negligence of independent doctor where plaintiff sought out care of hospital and not doctor).

Statutes of limitations exist for a reason—to afford security against stale claims. The mischief which a statute of limitations is intended to remedy is general inconvenience resulting from a delay in the assertion of a legal right which it is practicable to assert. *Hullinger v. Board of Regents*, 249 Neb. 868, 546 N.W.2d 779 (1996).

In addition, we have stated that

"[a]ctions based upon professional negligence often turn upon minute and precise factual distinctions," and the pur-

pose of § 25-222 was to ensure that such actions "would be brought shortly after the alleged negligence occurred or was discovered so that the professional could have a fair chance to defend on the merits and not find his [or her] defenses eroded by the lapse of time."

*Alegent Health Bergan Mercy Med. Ctr. v. Haworth,* 260 Neb. 63, 72, 615 N.W.2d 460, 467 (2000). This policy consideration becomes more acute when the defendant in a medical malpractice case is a hospital.

Tolling the statute of limitations until the end of a patient's continued care presents no hardship to an individual physician's overseeing the patient's treatment because the physician has firsthand knowledge of the relevant facts during the entire period. Under agency principles, when the physician is an employee of the hospital and the patient remains under that physician's continual care past his or her discharge, that knowledge may be imputed to the hospital in some circumstances.

Patients do not, however, remain under the continued care or observation of the hospital's nursing staff after discharge. There may be a significant gap between hospital stays; different nurses may be on staff when the patient is readmitted; or, as in this case, the patient may be readmitted to a completely different department of the hospital.

We hold that a claim for malpractice against a hospital based upon the negligence of its nursing staff accrues when the patient is discharged from the hospital and that the continuing treatment doctrine does not toll the statute of limitations for subsequent admissions to the hospital authorized by the patient's affiliated but independent physician. Because Casey's cause of action accrued on October 28, 1995, her date of discharge, her petition filed on November 7, 1997, was barred by the statute of limitations.

LEVINE AND ROBERTSON

In their petition for further review, Levine and Robertson contend that the Court of Appeals erred by failing to determine whether Casey's subsequent treatment from November 3 through 20, 1995, was related to the allegedly wrongful acts or omissions of both Levine and Robertson during Casey's initial

stay in the hospital on October 27 and 28. They also argue that the Court of Appeals erred in finding Casey's evidence was sufficient to demonstrate that either doctor had actually treated Casey at any time after November 3.

In a malpractice action involving professional negligence, the burden is on the plaintiff to show: (1) the generally recognized medical standard of care, (2) a deviation from that standard by the defendant, and (3) the deviation was the proximate cause of the plaintiff's alleged injuries. *Neill v. Hemphill*, 258 Neb. 949, 607 N.W.2d 500 (2000).

Levine's affidavit stated that he, Robertson, and the hospital's staff had been "at all times in compliance with the generally recognized standards of care applicable in Omaha, Nebraska, or similar communities for medical practitioners, hospitals and other health care providers in the field of obstetrics who attended patients under the [same or similar] circumstances." This evidence was sufficient to establish a prima facie showing that Levine and Robertson met the applicable standard of care. See *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). The burden then shifted to Casey to introduce competent evidence to rebut the defendants' evidence and show that there was a genuine issue of fact. See *id.*

Ordinarily, in a medical malpractice case, the plaintiff must prove the physician's negligence by expert testimony. See *Fossett v. Board of Regents*, 258 Neb. 703, 707, 605 N.W.2d 465, 468 (2000), quoting *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975) (" 'whether a specific manner of treatment or exercise of skill by a physician or surgeon demonstrates a lack of skill or knowledge or a failure to exercise reasonable care is a matter that must usually be proved by expert testimony' ").

Dr. John Dale Dunn, Casey's medical expert, submitted affidavits establishing the generally recognized standard of care for doctors under these conditions. He concluded that Levine and Robertson had failed to meet those standards. After reviewing the hospital records, Dunn's opinion was that Robertson had fallen below this standard by failing to arrange for further monitoring of Casey and in discharging her from the hospital. He also opined that Levine had fallen below this standard because he was aware of Casey's history yet failed to inform the hospi-

tal nurses of her hypertension problem during her first hospitalization, failed to recognize the emergent nature of Casey's problems during her emergency room admission on November 3, 1995, failed to pursue immediate control of her hypertension, and failed to seek immediate consultation upon her readmission.

Dunn's affidavit also states that the delay caused by Levine's and Robertson's failure to anticipate and recognize Casey's uncontrolled hypertension resulted in Casey's developing "hypertensive encephalopathy, and a delay in proper consultation and management . . . resulted in permanent brain damage." Thus, for purposes of summary judgment, Dunn's affidavit is sufficient to create a genuine issue of material fact of Levine's and Robertson's negligence.

Next, we consider whether Casey has raised a genuine issue of material fact regarding the tolling of the statute of limitations. In *Healy v. Langdon, supra,* we stated that the 2-year statute of limitations on medical malpractice claims begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed. Therefore, a plaintiff seeking to extend the tolling of the 2-year statute of limitations in a medical malpractice case must prove facts which indicate that the physician continued to treat him or her after the allegedly wrongful act or omission and that the treatment was related to the alleged negligence. As discussed above, Dunn's affidavit establishes as an issue of material fact that the treatment for Casey's complications from November 3 through 20, 1995, was directly related to the delay in her diagnosis after the delivery of her child.

Casey does not specifically allege that she was treated by Levine or Robertson during her second hospitalization from November 3 through 20, 1995. Casey, however, submitted a second affidavit at the summary judgment hearing, in which she stated, "I retained the services of Drs. Levine and Robertson due to previous medical problems with my prior pregnancies. At all times during my prenatal and postnatal treatment, I was seen at Methodist Hospital for examination and tests and always at the direction of Drs. Levine or Robertson . . . ." Casey goes on to state, "My hospitalization in November, 1995, at Methodist under the care of Drs. Levine and Robertson, ended November

20, 1995." The attached hospital record shows Levine as the admitting physician and Robertson as an attending physician.

Levine and Robertson correctly note that the hospital record also lists nine other treating physicians. However, the issue is whether *they* were involved in continuing treatment of Casey as a result of their alleged wrongful acts or omissions during her first hospitalization.

Viewing the evidence in the light most favorable to Casey and giving her the benefit of all reasonable inferences deducible from the evidence, we conclude that the Court of Appeals correctly determined that Casey's affidavit and the attached medical record summary were sufficient to raise a genuine issue of material fact whether the statute of limitations was tolled in her claim against Levine and Robertson until her second discharge from the hospital on November 20, 1995.

## CONCLUSION

We conclude that the Court of Appeals erred in reversing the district court's grant of summary judgment in favor of the hospital because Casey's cause of action for malpractice against the hospital accrued upon her discharge on October 28, 1995.

We also conclude that the Court of Appeals correctly reversed the district court's grant of summary judgment in favor of Levine and Robertson because there were genuine issues of material fact whether the statute of limitations was tolled against Levine and Robertson until Casey's second discharge from the hospital on November 20, 1995, and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.