Michael GRASSMUECK, Bankruptcy Trustee for the estates of W.J. Hoyt Sons Management Co., Ltd. and W.J. Hoyt Sons Ranches, MLP, Plaintiffs,

v.

The AMERICAN SHORTHORN ASSO-CIATION, a Nebraska corporation, and Dr. Roger E. Hunsley, an individual, Defendants.

No. 8:00CV3284.

United States District Court, D. Nebraska.

March 22, 2005.

Robert K. Baldwin, Goetz, Gallik Law Firm, Bozeman, MT, Steven M. Ramaekers, V. Gene Summerlin, Jr., Ogborn, Summerlin Law Firm, Lincoln, NE, for Plaintiff.

James T. Gleason, Robert J. Becker, Stalnaker, Becker Law Firm, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

CAMP, District Judge.

This matter is before the Court on the Motion for Summary Judgment (Filing No. 52) filed by The American Shorthorn Association ("ASA") and Dr. Roger E. Hunsley (collectively the "Defendants"). The Plaintiff, Michael Grassmueck, is the trustee in the Chapter 7 bankruptcy cases of *In re W.J. Hoyt Sons Management Co., Ltd.,* Case No. 397–31374–elp7 (Bankr.Ore. 1997) and *In re W.J. Hoyt Sons Ranches, MLP,* Case No. 397–3175–elp7 (Bankr.Ore. 1997). Grassmueck is the third such trustee appointed. He and his predecessors are referred to herein as the "Trustee." The original bankruptcy action was filed in Oregon on February 24, 1997. On November 13, 1998, the bankruptcy court entered a judgment (Filing No. 25, Ex. M), substantively consolidating the estates of the Debtors and 271 other debtor entities and 31 "assumed business names or alter egos" into a single consolidated estate for purposes of the bankruptcy proceeding. This Court will refer to the consolidated debtor entities as the "Partnership Entities." Defendants seek summary judgment on the basis that 1) the Partnership Entities were *in pari delicto* with the Defendants, and 2) the action is barred by the statute of limitations.

## Background

This case is before the Court pursuant to its diversity jurisdiction. The original Complaint was filed on November 3, 2000. (Filing No. 1). The Amended Complaint (Filing No. 7) alleges that Walter J. Hoyt III and other members of the Hoyt family engaged in a fraudulent investment scheme by forming investment partnerships that purportedly owned high quality, high value, registered shorthorn cattle, leading investors to believe that they would receive a high return on their investment and substantial tax benefits. (*Id.* at ¶ 15). Between 1986 and 1998, the Hoyts allegedly solicited and received more than $100 million in investor funds through the Partnership Entities. (*Id.* at ¶ 16).

In this action, the Trustee seeks to recover damages from the Defendants based on their alleged negligence in allowing the Hoyts to register cattle fraudulently as shorthorns, thereby falsely inflating their value, and contributing to the fraud perpetrated on the bankruptcy estates' creditors. (*Id.* at 21–27). The Defendants contend that 1) the fraud perpetrated by Hoyts as general partners of the Partnership Entities places them *in pari delicto* with the Defendants, and bars the Trustee's claims against the Defendants, and 2) the statute of limitations applicable to any such negligence action expired before the filing of the original Complaint on November 3, 2000.

## Facts

There is an abundance of issues of fact regarding the Defendants' alleged negligence, the duty the Defendants may have

owed to the Partnership Entities or their investors, and whether the Partnership Entities or their investors relied on the Defendants' alleged negligent acts or omissions. Such issues of fact are not material to the Court's analysis of the issues raised in the Defendants' Motion for Summary Judgment, however. For purposes of the pending Motion only, the Court will assume that the Defendants were negligent and that the investors in the Partnership Entities and their creditors in some manner relied on the Defendants' negligent acts or omissions when investing in or extending credit to the Investment Partnerships. Central to the Court's analysis for purposes of the pending Motion is the fact that the Partnership Entities operated as a single organism under the direction and control of the Hoyts, who perpetrated the fraud that led to the bankruptcy action.

Allen C. Painter is a Senior Bankruptcy Analyst in the Office of the United States Trustee in Portland, Oregon, and a Certified Public Accountant. (Filing No. 25, Exhibit J (hereafter "Painter Decl.") ¶ 1). He assisted the Trustee in all aspects of the administration of the Partnership Entities' estates. (*Id.* at ¶ 2). Painter's investigation revealed that the Partnership Entities were run as a unified livestock breeding enterprise. (*Id.* at ¶ 13). No separate accounting records were maintained regarding the entities' finances or cattle ownership. (*Id.* at ¶ 14). The Partnership Entities' cattle database is "useless," and it is impossible to reconstruct the financial affairs of the entities. (*Id.* at ¶¶ 15–16).

The Trustee submitted a Memorandum in support of the substantive consolidation of the Partnership Entities in a single bankruptcy action. (Filing No. 25, Ex. K (hereafter "Trustee's Memorandum")). According to the Trustee, Walter J. Hoyt III was the "general partner or person in control" of all the Partnership Entities. (*Id.* at p. 33). Hoyt functioned as the putative chief executive officer of the cattle investment operation. (*Id.*). When a new partner made an initial investment, he or she signed an irrevocable, absolute power of attorney giving Hoyt the authority to act in the investor's name for all purposes. (*Id.*). Although the Partnership Entities began as limited partnerships, they were subsequently converted to general partnerships. (Filing No. 25, Ex. O, Plaintiff's Answers to First Set of Interrogatories, p. 4). Most of the claims in the bankruptcy are by disappointed partnership investors. (Trustee's Memorandum at p. 37).

The Trustee's claims of negligence and negligent misrepresentation against the Defendants are not based on actual certificates issued by the Defendants compared to actual cattle, but on evidence of inaccurate or fraudulent information provided by the Partnership Entities to the Defendants. (Filing No. 57, Ex. 2(e), Plaintiff's Answers to Second Set of Interrogatories, pp. 1–5).

**Summary Judgment Standard**

With respect to summary judgment, the Court must examine the record in the light most favorable to the nonmoving party, in this case the Trustee. *U.S. ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 767 (8th Cir.2001). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The proponent need not, however,

negate the opponent's claims or defenses. *Id.* at 324–25, 106 S.Ct. 2548.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). In addition, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment.... Instead, 'the dispute must be outcome determinative under prevailing law.' " *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992) (citation omitted) (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir.1989)).

**Analysis**

*In Pari Delicto Defense*

The Defendants argue the because the Hoyts were partners in the Partnership Entities, and the Hoyts perpetrated the fraud which led to the injuries, the Partnership Entities are subject to the defense of *in pari delicto*. The Trustee contends that when the Hoyts provided false information to the Defendants to obtain certificates, the Hoyts were not acting on behalf of the Partnership Entities, and that, in any event, a trustee is not subject to equitable defenses that can be asserted against a debtor.

Based on the Painter Declaration and the Trustee's Memorandum, there is no genuine issue of material fact with respect to the Hoyts' status as general, controlling partners in all the Partnership Entities. The Partnership Entities were in fact a single host for the Hoyts' fraudulent scheme, having no legal, financial, or geographic criteria to distinguish one entity from another. A few excerpts from the Painter Declaration and the Trustee's Memorandum illustrate this fact:

"[T]he records of the [Partnership Entities] were commingled, incomplete, inaccurate, and disorganized." (Painter Decl. ¶ 8).

"I could not locate any source documents, check registers, journals, ledgers, financial statements or other accounting records for any investor partnership in my review of the Hoyt entity records." (*Id.* ¶ 11).

"I have not located records by which Hoyt investors or creditors were provided with information regarding the financial condition of the Hoyt entities in which they invested." (*Id.*).

"... I conclude that the [Partnership Entities] were run as a unified livestock breeding enterprise." (*Id.* ¶ 13).

"... I could not locate the type of records which would be expected for entities operating separate businesses. The records found were incomplete and inconsistent. By at least 1995, the cattle and cash went into and out of a common pool and I could find no evidence that any separate accounting records were maintained, let alone records which could separate the entities financially or with regard to cattle ownership." (*Id.* ¶ 14).

"... [T]he many Hoyt entities did not have separate business locations." (*Id.* ¶ 17).

"... [I] have found no evidence ... that any investor partner or creditor relied on the separateness of the Hoyt entities before investing in or extending credit to a Hoyt entity." (*Id.* ¶ 18).

"The exact number of Investor Partnerships is unclear—new partnerships were continually created and existing partnerships occasionally changed form or were terminated and recreated. Partners were changed from partnership to partnership as Walter J. Hoyt III deemed it necessary for tax purposes." (Trustee's Memorandum, p. 8).

"All cattle owned by Investor Partnerships were managed as part of a common commingled herd together with cattle belonging to various of Hoyt entities." (*Id.* at p. 9).

"The Hoyt cattle were managed as a commingled herd, without regard to their ownership by any single Investor Partnership or other Hoyt entity." (*Id.* p. 15).

"Often an entity changed form, for example, from a partnership to a joint venture, and only the initials at the end identified the new entity." (*Id.* at p. 27).

"Just as the Hoyt cattle were managed as a commingled whole, without regard to ownership, so were funds coming to the organization." (*Id.* at. 30).

"After the breakup of Hoyt & Sons Ranches partnership in 1988, Walter J. Hoyt III with the assistance of several trusted managers, dominated the affairs of all of the Hoyt entities. Mr. Hoyt was the general partner or person in control of all partnerships. He devised the overall structure of the cattle investment operation, and functioned as its putative chief executive officer." (*Id.* at p. 33).

"When an investor subscribed and made an initial investment, the partner signed an irrevocable, absolute power of attorney giving Walter J. Hoyt III the authority to act in the investor's name for all purposes." (*Id.* at p. 33).

"The majority of claims filed by creditors in these bankruptcies are filed by disappointed investors in the Hoyt cattle operation. These investors clearly did not rely on the separateness of the various Hoyt entities. In fact, they were unaware of almost all of the details of the Hoyt enterprise, including the functions of the separate entities and the financial condition of those entities. Investors were not even provided with a financial statement of the entity in which they invested. The investors were not aware of the nature and scope of their own liability, or even who their partners were .... their general partner Walter J. Hoyt III handled all of the details." (*Id.* at p. 38).

"The Hoyt cattle investment operation was run by Walter J. Hoyt III as a unified business." (*Id.* at p. 38).

"The trustee could examine records and take testimony until the cows come home, and he would be little closer than he is now to reconstructing the separate ownership of the [Partnership Entities]." (*Id.* at p. 38).

The Hoyts, particularly Walter J. Hoyt III, operated the Partnership Entities as a unified, alter-ego enterprise. The question thus becomes whether the Trustee in the Chapter 7 bankruptcy is subject to equitable defenses, such as *in pari delicto,* which could be asserted against the Partnership Entities themselves.

The estate over which a bankruptcy trustee is given control "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "In all cases where the trustee seeks to assert or enforce the debtor's right of action against another, the trustee generally stands in the debtor's shoes regarding de-

fenses to the action." *Collier on Bankruptcy*, 15th Ed. Rev., ¶ 541.08. "[N]owhere in ... relevant provisions of the Code is there any suggestion that the trustee has been given the authority to collect money not owed to the estate." *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1229–30 (8th Cir.1987).

In *In re Hedged–Investments Assoc., Inc.*, 84 F.3d 1281 (10th Cir.1996), a Chapter 7 trustee contended that he and the partnership he represented should be immune from defenses based on the general partner's fraudulent Ponzi scheme which led to the bankruptcy. The court disagreed, holding that the trustee's status did not insulate the partnership from defenses otherwise available to third parties based on the wrongdoing of the debtor's general partner:

> In a qualitative sense, the phrase [in 11 U.S.C. § 541(a)(1)] establishes the estate's rights as no stronger than they were when actually held by the debtor. *Hays & Co., v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n. 7 (3d Cir.1989). Congress intended the trustee to stand in the shoes of the debtor and "take no greater rights than the debtor himself had." H.R.Rep. No. 595, 95th Cong., 1st Sess. 368, reprinted in 1978 U.S.C.C.A.N. 5963, 6323. Therefore, to the extent [the trustee] must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from the wrongdoing of [the general partner who devised the fraudulent Ponzi scheme] and HIA, Inc.

*Id.* at 1289.

Among the defenses raised by the defendant to the trustee's claims in *Hedged–Investments* was the *in pari delicto* defense. *Id.* at 1284. The Court of Appeals held that a trustee who proceeds under 11 U.S.C. § 541 stands in the shoes of the debtor and is subject to all defenses that could be raised against the debtor, including defenses based on fraud committed by a partner in the debtor entity, imputed to the partnership. *Id.* at 1285–86.

In *In re Dublin Securities, Inc.*, 133 F.3d 377 (6th Cir.1997) *cert. denied sub nom. Terlecky v. Hurd*, 525 U.S. 812, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998), a Chapter 7 trustee asserted a malpractice action against law firms and lawyers who represented the debtors/securities companies in connection with a fraudulent public stock offering. The defendants raised the *in pari delicto* defense, and the trustee claimed that the defense should not apply because the corporate debtors were not at fault, but only the individuals who had dominated the companies. The court said:

> [W]hile the trustee argues that the individual officers of the debtors acted adversely to the corporate interest and that their wrongdoing should not, therefore, be imputed to the corporate entity, he recognizes "that officers and directors so dominated and controlled the corporation that the corporation had no separate mind, will, or existence of its own." Consequently, the officers and directors were the "alter egos" of the debtor corporations and any malfeasance on their parts is directly attributable to the debtors themselves.
>
> . . . . .
>
> We conclude that the equitable principles of the doctrine of *in pari delicto* were properly interposed in this matter to prevent recovery by debtors who conspired with the defendants to defraud innocent investors.

*Id.* at 380–81.

The United States Court of Appeals for the Second Circuit has taken a similar approach, holding that a bankruptcy trustee, standing in the shoes of the debtor,

may not recover from third parties for their participation in a scheme that the debtor had itself initiated and joined in. *In re Mediators, Inc.,* 105 F.3d 822 (2nd Cir.1997). Although the trustee in *In re Mediators* argued that the corporate principal acted in a manner adverse to the interests of the corporation and, therefore, his actions should not be imputed to the corporation, the court held that the "adverse interest exception" is inapplicable when the corporation is in effect the alter ego of the principal. Where the agent committing the fraud is the corporate principal, then the "sole actor" rule applies, and the agent's knowledge is imputed to the corporation. *Id.* at 827. See also *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093–94 (2d Cir.1995); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 120 (2d Cir.1991).

In *Official Committee v. R.F. Lafferty & Co.,* 267 F.3d 340 (3d Cir.2001), the court reached a similar result. In *Lafferty,* a creditors' committee was authorized by a bankruptcy court to pursue claims on behalf of the debtors' estates and had the status of a trustee for purposes of the case. The court held that the committee stood in the shoes of the debtors when pursuing claims against third parties, and was subject to all defenses which could be raised against the debtors, including *in pari delicto.* Claims against third parties who were alleged co-conspirators with the mastermind of the debtors' Ponzi scheme were dismissed. *Id.* at 354–58. The court in *Lafferty* cited with approval the Tenth Circuit's analysis in *Hedged–Investments.*

It must be recognized that a somewhat differing view, known as the "evil zombie rule" appears in the Seventh Circuit, originating in *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir.) *cert. denied sub nom. African Enterprise, Inc. v. Scholes,* 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). In *Scholes,* a receiver for corporations owned by Douglas, a Ponzi-scheme mastermind, sought to void certain fraudulent conveyances made to Douglas's former spouse and to religious and charitable organizations. Finding that the receiver should not be subject to the defenses which could have been asserted against the corporations, the court said:

> The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys—for the benefit not of Douglas but of innocent investors—that Douglas had made the corporations divert to unauthorized purposes. ... The important thing is that the limited partners were not complicit in Douglas's fraud; they were its victims.

*Id.* at 754.

The Trustee also refers this Court to the Ninth Circuit decision in *F.D.I.C. v. O'Melveny & Myers,* 61 F.3d 17, 19 (1995), in which the court held that a receiver for a failed savings and loan could sue the savings and loan's former lawyer for malpractice and breach of fiduciary duty without being subject to equitable defenses that could have been raised against the savings and loan. The Trustee argues that the Ninth Circuit's reasoning should be accepted by this Court because the bankruptcy case at issue is pending in the state of Oregon, within the Ninth Circuit. To the contrary, the Ninth Circuit issued its decision in *O'Melveny & Myers* upon remand by the United States Supreme Court, with directions to apply *state law* regarding imputation of knowledge to corporate victims and any resulting equitable defenses. See *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 89, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

Accordingly, we now turn to state law regarding partnership, the imputation of

knowledge to partnership entities, and resulting equitable defenses. In *F.D.I.C. v. Nordbrock*, 102 F.3d 335 (8th Cir.1996), the court said: " '[A] federal district court sitting in Nebraska must follow Nebraska's conflict of law rules.' " *Id.* at 337 (quoting *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.*, 858 F.2d 1339, 1342 (8th Cir.1988)). In *Nordbrock*, the court recognized that the Nebraska Supreme Court, as a general matter, utilizes the Restatement (Second) of Conflict of Laws (1989) for issues relating to a choice of law. *Id.* at 338, citing *Harper v. Silva*, 399 N.W.2d 826, 828 (Neb. 1987); *Cockle v. Cockle*, 215 Neb. 329, 339 N.W.2d 63 (1983). Section 6 of the Restatement (Second) of Conflict of Laws directs a court to consider:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The ASA is a Nebraska corporation with its principal place of business in Nebraska. (Amended Complaint, Filing No. 7, ¶ 4). Hunsley, who served as the Executive Secretary–Treasurer of the ASA at all times relevant to the action, is a resident of Nebraska. (*Id.* at ¶ 5). The cattle owned by the Debtors and Investment Partnerships were purportedly located in Nebraska, Oregon, and California. (*Id.* at ¶ 14). Although some of the Investment Partnerships were formed in Nevada and some in California (Filing No. 25, Ex. M, Judgment

for Substantive Consolidation, pp. 1–7), the state-of-origin of most of the partnerships is unclear from the record. The main headquarters of the Hoyt enterprises where investor records were kept "was located in various states at various times." (Trustee's Memorandum p. 32).

At least thirty states, including Nebraska, California, and Oregon, have adopted the Uniform Partnership Act of 1997 ("UPA"). (See Callison, "Partnership Law and Practice: General and Limited Partnerships" (Rev.2003) § 1:1, n. 13). The Court, therefore, will look to the UPA for guidance on partnership law and its effect on imputation of knowledge and the application of equitable defenses:

A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

UPA § 102(f).

In general, knowledge possessed by one partner concerning the partnership's business is deemed to be possessed by all partners, so that the knowledge legally attributable to the partnership is the collective knowledge of those partners, employees and agents through which it acts. The lack of actual notice to partners with respect to the partnership acts of their copartners is, therefore, immaterial.

59A Am.Jur.2d, Partnership § 209, citing UPA § 102 (1997).

 The fraud exception described in UPA § 102(f) does not apply 1) when the fraud is committed for the benefit of the partnership, 2) with respect to the rights of third parties acting without knowledge of the fraud, or 3) when the partner perpetrating the fraud acts as the sole represen-

tative or "alter-ego" of the partnership. Under such circumstances, the partnership is charged with the knowledge of that partner and cannot use lack of knowledge as a defense. 59A Am.Jur.2d, Partnership § 210, citing UPA § 102(f).

■ While it may be debatable whether or not the Hoyts' fraudulent acts were committed for the benefit of the Partnership Entities, it is clear that the Defendants acted without knowledge of the fraud (Amended Complaint ¶ 28), and the Hoyts used the Partnership Entities as their alter-egos, disregarding all legal and business formalities and holding absolute and irrevocable powers of attorneys from all partners. (Trustee's Memorandum, p. 33). The fraud exception to UPA § 102(f) is, therefore, inapplicable.

The Court's analysis is also guided by section 305 of the Uniform Partnership Act which provides:

A partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership.

While the Hoyts acted "wrongfully," they did act in the ordinary course of business of the Partnership Entities and with the authority of those entities. Liability for their wrongful acts is thus attributable to the Partnership Entities under partnership law, and supports the Defendants' *in pari delicto* defense.

To the extent that the Seventh Circuit's "evil-zombie rule" or the Ninth Circuit's analysis in *O'Melveny & Myers* may have any application to the facts of this case, the Court rejects such analysis as contrary to the congressional mandate in 11 U.S.C. § 541 and the law of partnership. The "evil zombie" analysis was specifically rejected by the Tenth Circuit in *Hedged–Investments*, 84 F.3d at 1285, and was

distinguished by the Third Circuit in *Lafferty*, 267 F.3d at 358, in which the court noted that receivers are not subject to the limits of 11 U.S.C. § 541 that are patently applicable to bankruptcy trustees. The Ninth Circuit's analysis in *O'Melveny & Myers* was distinguished by the Third Circuit in *Lafferty* on the same basis.

In this case, the investors in the Partnership Entities chose the Hoyts as their partners. The investors gave the Hoyts unconditional and irrevocable powers of attorney. The Hoyts perpetrated a fraud on the investors *and* on the Defendants. The Trustee acknowledges that the Defendants "were not parties to the Hoyts' fraudulent scheme, and did not themselves have fraudulent intent." (Amended Complaint, ¶ 28). This Court is not persuaded that the congressional intent underlying 11 U.S.C. § 541, the law of partnership, and the defense of *in pari delicto*, should be ignored or revised to allow the Trustee to pursue claims against the Defendants for the admirable goal of augmenting the Debtors' estate.

*Statute of Limitations Defense*

Because the Court finds that the defense of *in pari delicto* is available to the Defendants, the statute of limitations defense will be addressed only briefly.

We begin with the forum state's conflict-of-laws analysis under the Restatement (Second) of Conflict of Laws:

"Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6 [supra]. In general, unless the exceptional circumstances of the case make such a result unreasonable:

(1) The forum will apply its own statute of limitations barring the claim.

(2) The forum will apply its own statute of limitations permitting the claim unless

(a) maintenance of the claim would serve no substantial interest of the forum; and

(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."

Restatement (Second) of Conflict of Laws § 142 (1989).

*Nordbrock,* 102 F.3d at 338–39.

The Trustee does not allege that the acts or omissions of the Defendants giving rise to this case occurred anywhere other than Nebraska. No argument has been presented to the Court for the application of the statute of limitations of any other jurisdiction. The Court finds no exceptional circumstances warranting a deviation from the application of section 142(1) of the Restatement (Second) of Conflict of Laws, applying the statute of limitations of the forum state, Nebraska.

Nebraska's statute of limitations for actions based on negligence is four years:

The following actions can only be brought within four years: ... (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, except as provided in sections 30–2206 and 76–288 to 76–298.

Neb.Rev.Stat. § 25–207 (Reissue 1995).

■■ The Nebraska Supreme Court has held that in negligence actions, a statute of limitations generally begins to run as soon as the cause of action accrues, and an action accrues as soon as the act or omission occurs. *Shlien v. Board of Regents,* 263 Neb. 465, 640 N.W.2d 643, 650 (2002), citing *Berntsen v. Coopers & Lyb-*

*rand,* 249 Neb. 904, 546 N.W.2d 310 (1996). The Nebraska Supreme Court has also held that in certain cases where the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury, then the statute of limitations begins to run when the potential plaintiff discovers, or with reasonable diligence should have discovered, the existence of the injury. *Id.,* citing *Condon v. A.H. Robins, Inc.,* 349 N.W.2d 622 (1984).

■■ In this case, the Trustee alleges that the Defendants committed a continuing tort by issuing cattle registration certificates negligently over a period of years, and by failing to investigate and discover the Hoyts' fraud. Although the Amended Complaint refers to the Defendants acting as expert witnesses on behalf of the Hoyts in 1986 and 1996 (*id.* at ¶ 25), the Trustee's allegations against the Defendants are otherwise unspecific with respect to the dates of alleged acts or omissions. To understand how the Nebraska Supreme Court applies a statute of limitations when continuing negligence is alleged, it is helpful to review that court's decisions involving allegedly-negligent courses of treatment, representation, or professional service. In such cases, the Nebraska Supreme Court has held that a statute of limitations does not begin to run until the allegedly-negligent course of treatment, representation, or service is completed (*Casey v. Levine,* 261 Neb.1, 621 N.W.2d 482 (2001); *Joyner v. Forney,* 78 F.3d 1339 (8th Cir.1996)), *unless* the plaintiff has knowledge of facts constituting notice of alleged negligence and yet continues the business relationship with the defendant. *Reinke Mfg. Co., Inc. v. Hayes,* 256 Neb. 442, 590 N.W.2d 380 (1999); *Economy Housing Co., Inc. v. Rosenberg,* 239 Neb. 267, 475 N.W.2d 899 (1991); *Board of Regents v. Lueder Constr. Co.,* 230 Neb. 686, 433 N.W.2d 485 (1988). Because the Court finds that the

Hoyts' knowledge of their own fraudulent scheme is imputed to the Partnership Entities, the Court concludes that Nebraska's four-year statute of limitations for actions based on negligence began to run when the Hoyts initiated their fraudulent scheme, and induced the Defendants' allegedly negligent course of conduct. According to the Amended Complaint, the Hoyts' scheme began in the early 1980's (*id.* at ¶ 15), with the bulk of the Investment Partnership funds entrusted to the Hoyts beginning in 1986. (Id. at ¶ 16).

The Court recognizes that 11 U.S.C. § 108(a) provides:

> If applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the [bankruptcy] petition, the trustee may commence such action only before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

The Defendants contend that the Hoyts' knowledge of their own fraud is imputed to the Partnership Entities, and so the four-year statute of limitations expired before the filing of the bankruptcy petition on February 24, 1997. The Defendants also direct the Court to the bankruptcy *court's* docket sheet showing that an "Order of Relief" was entered on June 5, 1997. (Filing No. 57, Ex. 2(a), p. 5). Finally, the Defendants note that the last ASA certificates were issued to the Partnership Entities in 1995. (Affidavit of Roger E. Hunsley, Filing No. 55, ¶ 3). The Trustee argues that the Hoyts' knowledge should not be imputed to the Partnership Entities, and that the real "order of relief" was the Order of Substantive Consolidation on November 13, 1998, giving the Trustee two years from that date to file this action.

The Court finds that the Hoyts' knowledge of their own fraud is imputed to the Partnership Entities, and it was that fraud which gave rise to the allegedly-negligent acts and omissions by the Defendants. Under any calculation, therefore, the limitations period expired well before the Complaint was filed on November 3, 2000.

## CONCLUSION

The Court finds that the Hoyts' fraud is imputed to the Partnership Entities. The Partnership Entities were, therefore, *in pari delicto* with the Defendants. Because the Trustee stands in the shoes of the Partnership Entities, the Trustee is barred from pursuing his negligence claims against the Defendants. The Court also finds that the Hoyts' knowledge of their fraudulent scheme is imputed to the Partnership Entities, and that the statute of limitations for any claims by the Trustee against the Defendants expired before the filling of the Trustee's Complaint.

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 52) is granted;

2. A separate judgment will be entered, dismissing the action.