Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/14/2020 08:08 AM CDT

Terry L. Dondlinger and Valerie Dondlinger,
appellants, v. Jayson D. Nelson,
an individual, et al., appellees.

___ N.W.2d ___

Filed May 22, 2020.    No. S-19-428.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

3. **Summary Judgment.** The primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.

4. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.

5. ____: ____. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

6. **Limitations of Actions: Malpractice: Attorney and Client.** If a claim for professional negligence in the nature of legal malpractice is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the discovery exception of Neb. Rev. Stat. § 25-222 (Reissue 2016) or has been tolled pursuant to the continuous representation rule.

7. **Limitations of Actions: Words and Phrases.** "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress.

8. **Limitations of Actions: Malpractice.** Under Neb. Rev. Stat. § 25-222 (Reissue 2016), it is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed.

9. **Limitations of Actions: Malpractice: Words and Phrases.** In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action.

10. **Malpractice: Attorney and Client: Damages: Words and Phrases.** In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss. Legal injury is not damage; damage is the loss resulting from the misconduct.

11. **Limitations of Actions: Malpractice.** The statute of limitations for a claim of professional negligence is tolled if there is a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence.

12. **Limitations of Actions: Malpractice: Attorney and Client.** In a claim of professional negligence, if a client discovers the act or omission prior to the termination of an attorney's representation, then the continuous representation exception does not apply to toll the statute of limitations.

13. **Summary Judgment: Affidavits.** Where the movant for summary judgment submits an affidavit as to a material fact, and that fact is not contradicted by the adverse party, the court will determine that there is no issue as to that fact.

14. **Summary Judgment.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.

Appeal from the District Court for Douglas County: Horacio J. Wheelock, Judge. Affirmed.

James R. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellants.

Mark C. Laughlin and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## NATURE OF CASE

This appeal involves a legal malpractice action brought by Terry L. Dondlinger and Valerie Dondlinger which the district court for Douglas County dismissed as time barred. The district court concluded that the continuing representation exception to the 2-year statute of limitations in Neb. Rev. Stat. § 25-222 (Reissue 2016) did not apply. Instead, because the Dondlingers discovered the allegedly negligent act prior to the termination of the attorney-client relationship, the 1-year discovery rule in § 25-222 did apply and the Dondlingers' action was time barred. The district court granted the defendants' motion for summary judgment and dismissed the Dondlingers' action with prejudice. The Dondlingers appeal.

## STATEMENT OF FACTS

On May 18, 2018, the Dondlingers filed a complaint against defendants Jayson D. Nelson and Hunegs, LeNeave & Kvas, P.A. On June 12, the Dondlingers amended their complaint and added Katie D. Figgins as a defendant. The complaints against the three defendants (collectively the appellees) set forth claims of professional negligence relating to the appellees' legal representation of the Dondlingers in a personal injury action for an accident that occurred on April 6, 2012. This personal injury action forms the underlying case in the current legal malpractice appeal.

In their controlling complaint, the Dondlingers allege that in the underlying case, the appellees "negligently failed to properly file a Tort Claim pursuant to the Nebraska Political Subdivision Claims Act, Neb. Rev. Stat. § 13-901 *et seq.*" on Nickerson Township, Dodge County, Nebraska. In the underlying case, Nickerson Township was granted summary judgment and dismissed from the case. The appellees, representing the Dondlingers, filed a notice of appeal to the Nebraska Court

of Appeals in November 2015 in case No. A-15-1108. During the pendency of case No. A-15-1108, the appellees filed a response to an order to show cause and a motion for extension of time to file a brief on behalf of the Dondlingers. The appeal was ultimately dismissed in May 2016 for their failure to file a brief.

In Nelson's affidavit filed in the current legal malpractice case, he explained how he informed the Dondlingers of the alleged negligence in the underlying case and the outcome in the Court of Appeals. The affidavit states:

5. During the course of the representation of Terry Dondlinger and Valerie Dondlinger, I initiated a telephone conference between myself and Terry Dondlinger and Valerie Dondlinger. In this telephone conference, I personally informed [them] regarding the District Court's finding that we did not properly serve Nickerson Township. This is the alleged negligence that is set forth in [their] Complaint in the above-captioned matter. We discussed at length the facts and circumstances which led to the dismissal and the appeal.

6. I advised Terry and Valerie Dondlinger that our representation of them would end, and that we would be closing their file, after advising them of the alleged negligence at issue in this Complaint. This fact is reflected in [the Dondlingers'] Statement of Undisputed Facts.

The Dondlingers' answers to the appellees' interrogatories in the current legal malpractice case state that "[w]ithin thirty (30) days after June 23, 2016," (1) the Dondlingers discovered the fact that the appellees had failed to properly file their tort claim in the underlying case and (2) the Dondlingers' attorney-client relationship with the appellees ended. The appellees do not dispute these assertions.

The Dondlingers filed the present action on May 18, 2018, which, given discovery within 30 days after June 23, 2016, was after the 1-year discovery rule contained in § 25-222 but within the general 2-year statute of limitations for professional

negligence set forth in § 25-222. The Dondlingers argued to the district court and again on appeal that their claim did not accrue until the continuing representation by the appellees ended, that the 2-year limitations period started on the termination of the relationship, and that their action was timely. The appellees filed a motion for summary judgment in the district court on the basis of the statute of limitations, § 25-222.

On January 2, 2019, the district court granted the appellees' motion for summary judgment and dismissed the Dondlingers' action with prejudice. The Dondlingers filed a motion to alter or amend the judgment. The district court, on its own motion, vacated its prior order and requested that the parties provide supplemental briefing on the "continuous representation doctrine." On April 30, the district court denied the motion to alter or amend and entered an order granting summary judgment in favor of the appellees. In reaching its decision, the district court concluded that the continuous representation doctrine did not toll the accrual of the action, because the Dondlingers had discovered the alleged negligence during the course of the attorney-client relationship. The court determined that the action was time barred because the Dondlingers filed their claim for professional negligence more than 1 year after discovery of the alleged negligent act.

The Dondlingers appeal.

ASSIGNMENT OF ERROR

The Dondlingers claim that the district court erred when it dismissed their amended complaint as untimely. They contend that the 2-year statute of limitations was tolled because the appellees continued to represent them during the appeals process.

STANDARDS OF REVIEW

[1,2] Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the

moving party is entitled to judgment as a matter of law. *Meyer Natural Foods v. Greater Omaha Packing Co.*, 302 Neb. 509, 925 N.W.2d 39 (2019). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## ANALYSIS

Reduced to its essence, the Dondlingers argue that the continuous relationship doctrine tolled the statute of limitations, thereby giving them 2 years to file their legal malpractice case after learning of their attorneys' alleged negligence. The Dondlingers claim that the district court erred when it ruled that because the continuous relationship did not apply, the Dondlingers' complaint was subject to the 1-year discovery rule and was time barred. We find no merit to the Dondlingers' argument and therefore affirm the dismissal of the Dondlingers' action.

[3-5] In this case, the appellees successfully moved for summary judgment. The primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled. *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019). Neb. Rev. Stat. § 25-1332(1) (Cum. Supp. 2018) provides in part that a motion for summary judgment shall be granted "if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Williamson v. Bellevue Med. Ctr., supra*. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a

material issue of fact that prevents judgment as a matter of law. *Id*.

The Dondlingers' legal malpractice action is a claim of professional negligence, and we turn to § 25-222 to determine the timeliness of the cause of action. Section 25-222 provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further,* that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

[6] If a claim for professional negligence in the nature of legal malpractice is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the discovery exception of § 25-222 or has been tolled pursuant to the continuous representation rule. See *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). We discussed the two exceptions to the 2-year provision in § 25-222 in recent case law. See *Guinn, supra*.

[7-10] With regard to the discovery rule, in *Guinn*, we stated:

> The discovery rule as it pertains to professional negligence claims is set forth in §25-222, quoted above. By the terms of the statute, the discovery rule applies only

when the cause of action is not discovered and could not reasonably have been discovered within the 2-year limitations period. If the discovery rule applies, then the limitations period is 1 year from the time the cause of action is or could have been discovered. "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed. *Id.* In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action. *Gering - Ft. Laramie Irr. Dist. v. Baker*, 259 Neb. 840, 612 N.W.2d 897 (2000). In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss. *Id.* Legal injury is not damage; damage is the loss resulting from the misconduct. See *id.*

286 Neb. at 597-98, 837 N.W.2d at 817.

[11] With regard to the continuous relationship rule, in *Guinn*, we stated:

[T]he statute of limitations for a claim of professional negligence is tolled if there is a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence. *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007). However, we have limited the reach of the continuous representation rule by stating that continuity does not mean mere continuity of the general professional relationship and that the continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional

relationship. See *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442,
590 N.W.2d 380 (1999).

286 Neb. at 598, 837 N.W.2d at 817.

The Dondlingers contend that they learned of the appellees'
alleged negligence within 30 days after June 23, 2016. The
complaint was filed on May 18, 2018. Given that the 1-year
discovery rule would not save their action, the Dondlingers
rely instead on the continuous representation rule to contend
their action was timely filed because the legal malpractice
action did not accrue until the conclusion of their first appeal
and the termination of their professional relationship with
the appellees.

[12] As noted, the controlling principle of law since at
least *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 475
N.W.2d 899 (1991), is that if the client discovers the act or
omission *prior* to the termination of the attorney's repre-
sentation, then the continuous representation exception does
not apply. In *Economy Housing Co.*, we explained that "[t]o
hold otherwise would merely encourage clients to sit on their
hands, with full knowledge of negligence on the part of the
professional who is serving them, knowing that the clock
would not start to run on their claim until they actually fired
the practitioner." 239 Neb. at 269, 475 N.W.2d at 900. To
determine whether the continuous representation exception
applies, the record would need to demonstrate when the
Dondlingers learned of the act or omission and, in particular,
whether that occurred prior to or after the end of the appel-
lees' representation.

In an effort to show that the Dondlingers learned of the error
prior to the termination of their representation, the appellees
offered Nelson's affidavit, which, as previously quoted, states
in paragraphs 5 and 6 as follows:

5. During the course of the representation of Terry
Dondlinger and Valerie Dondlinger, I initiated a tele-
phone conference between myself and Terry Dondlinger
and Valerie Dondlinger. In this telephone conference,

I personally informed [them] regarding the District Court's finding that we did not properly serve Nickerson Township. This is the alleged negligence that is set forth in [their] Complaint in the above-captioned matter. We discussed at length the facts and circumstances which led to the dismissal and the appeal.

6. I advised Terry and Valerie Dondlinger that our representation of them would end, and that we would be closing their file, after advising them of the alleged negligence at issue in this Complaint. This fact is reflected in [the Dondlingers'] Statement of Undisputed Facts.

[13] If uncontroverted, this evidence satisfied the appellees' objective to establish that the Dondlingers learned of the error during the attorney-client relationship, thus triggering the 1-year discovery period in § 25-222 and rendering the complaint filed on May 18, 2018, untimely. At this point, the burden with respect to this issue shifted to the Dondlingers to overcome the evidence that their complaint was time barred. In this regard, we have noted that where the movant for summary judgment submits an affidavit as to a material fact, and that fact is not contradicted by the adverse party, the court will determine that there is no issue as to that fact. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999).

A review of the record shows that by virtue of the evidence, including paragraph 9 of the amended complaint and answer thereto, it is undisputed that one attorney and the Dondlingers participated in a communication during which the attorney advised the Dondlingers that no petition for further review to the Nebraska Supreme Court would be filed after the Court of Appeals dismissed the Dondlingers' appeal. The time for filing a petition for further review is 30 days. Neb. Ct. R. App. P. § 2-102(F)(1) (rev. 2015). We logically understand that this communication occurred within the period available for filing such a petition for further review, i.e., within 30 days after the dismissal by the Court of Appeals. According to the Nelson affidavit, the conversation included an explanation of

the underlying act or omission and an indication that the attorneys would end the relationship.

The Dondlingers' answers to interrogatories Nos. 6 and 7 stated as follows:

> **INTERROGATORY NO. 6:** Please state the date that your attorney-client relationship with Defendants ended.
>
> **ANSWER:** See Complaint.
>
> **SUPPLEMENTAL ANSWER:** Within thirty (30) days after June 23, 2016.
>
> **INTERROGATORY NO. 7:** Please state the date that you discovered the fact that Defendants "negligently failed to properly file a Tort Claim pursuant to the Nebraska Political Subdivision Claims Act, Neb. Rev. Stat. § 13-901 et seq.", as alleged in paragraph six of your Amended Complaint in this action.
>
> **ANSWER:** See Response to Request for Admissions.
>
> **SUPPLEMENTAL ANSWER:** Within thirty (30) days after June 23, 2016.

No party asserts a date upon which the attorney-client relationship ended, but given the exchange regarding filing a petition for further review, and inferring a date favorable to the Dondlingers, the termination happened during the 30-day period available for filing a petition for further review, following the Court of Appeals' dismissal in May 2016. Based on the Dondlingers' responses to interrogatories, it is possible that the Dondlingers learned of the error on any day either before or after the termination of the relationship, but in any event, occurring during the 30 days "after June 23, 2016."

Having reviewed the record, it is clear that the Dondlingers have failed to specifically assert that they did not learn of the error until after the termination of the relationship, as they needed to demonstrate to take advantage of the continuous representation rule. Because the appellees carried their evidentiary burden and showed that the Dondlingers were advised of the error prior to the termination of the relationship, it was incumbent on the Dondlingers to controvert this

assertion; otherwise, their complaint was untimely filed. The Dondlingers have not provided evidence which controverts that of the appellees.

[14] We recognize that the Dondlingers' evidence identifies a 30-day period during which they learned of the appellees' act or omission, and we are aware that at the summary judgment stage, inferences should be in favor of the nonmoving party. However, although we must infer facts favorable to the Dondlingers, we are not permitted to speculate. Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment. *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019). In this case, there is no categorical inference that the Dondlingers learned of the appellees' negligent action or omission after the end of the relationship. Although there is a possibility, the Dondlingers did not assert they were unaware of the error until after the termination of the relationship. Given all the evidence and giving the Dondlingers the favorable inferences, their evidence amounts to the following: During the period for filing a petition for further review, we learned of the error on a date which might have been after the appellees terminated the relationship. The appellees' evidence that they communicated the error prior to the end of the attorney-client relationship stands uncontroverted.

## CONCLUSION

As explained above, the district court did not err when it ruled that the continuing representation exception did not apply, and that therefore, the Dondlingers' action was time barred, and when it granted summary judgment in favor of the appellees. The district court's dismissal of the Dondlingers' action is affirmed.

Affirmed.

Miller-Lerman, J., concurring.

Given our jurisprudence in the legal malpractice area regarding the continuous representation doctrine, I believe the

opinion is correct. We have stated that the continuous representation rule does not apply when the claimant discovers the alleged professional negligence *prior* to the termination of the professional relationship. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013); *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 475 N.W.2d 899 (1991). See *Bonness v. Armitage, ante* p. 747, ___ N.W.2d ___ (2020). However, as one treatise noted and this case illustrates, "[i]f applied rigidly, this approach can produce randomly harsh results." 3 Ronald E. Mallen, Legal Malpractice § 23:45, n.23 at 562 (2020). In the present case, the appellees asserted that they informed the Dondlingers of the alleged malpractice prior to the termination of the relationship and the Dondlingers asserted that it was possible that they discovered the appellees' alleged malpractice either before, simultaneously with, or after the termination of representation.

As I understand it, Nebraska is one of few jurisdictions that resolves the applicability of the continuous representation doctrine by focusing on whether the client discovered the alleged legal malpractice before or after the end of the representation. See *id*. To apply the doctrine in a reasonable manner, I believe, as a substantial majority of other states have recognized, the question is more nuanced. See 3 Mallen, *supra*, § 23:45 (collecting cases).

In *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), we explained the continuous treatment doctrine as it applied to medical malpractice and how it might apply to accountants and, by inference, other professional services. When we adopted the continuous treatment doctrine in 1941, we acknowledged the occurrence rule but nevertheless sought to avoid premature litigation when we stated:

> [I]t is just to the physician and surgeon that he [or she] may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to

correct the evils which made the observation and treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery. The [continuing treatment doctrine] is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations should begin to run when the treatment ceased.

*Williams v. Elias*, 140 Neb. 656, 662-63, 1 N.W.2d 121, 124 (1941).

Additional concerns, including avoiding disruption of the relationship and the potential for concealment, were articulated in *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001), and may be relevant in the present case. In *Casey*, we stated:

It is apparent that allowing a physician an opportunity to correct any malpractice and not disrupting the physician-patient relationship are the primary considerations underlying the continuing treatment doctrine in Nebraska. *Id.* See, also, *McDermott v. Torre*, 56 N.Y.2d 399, 408, 437 N.E.2d 1108, 1112, 452 N.Y.S.2d 351, 355 (1982) ("the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure [and] implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so"). It is the trust relationship that may make discovery of a claim difficult. See *Miller v. United States*, 458 F. Supp. 363, 366 (D. Puerto Rico 1978) ("[t]he rationale for the [continuing treatment doctrine] is the protection of the confidential physician-patient relationship . . . as well as the fear that the treating physician, 'knowing of his actionable mistake, might be able to conceal it from his patient or continuously to lull the patient into failing to institute suit within the ordinarily permissible time period'").

261 Neb. at 8, 621 N.W.2d at 488.

The foregoing rationales are in service to permit the professional an opportunity to be forthright and remedy the error. In the legal malpractice area, the continuous representation doctrine tolls the statute of limitations only for ongoing and continuous services by the attorney for the same or related subject matter after the professional negligence. See *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007). Continuity does not mean the mere continuity of the general professional relationship. *Behrens v. Blunk*, 284 Neb. 454, 822 N.W.2d 344 (2012). In this regard and for completeness, we are aware of the "exhaustion of appeals" approach adopted by some states, e.g., *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). But see *Story v. Bunstine*, 538 S.W.3d 455 (Tenn. 2017) (rejecting inter alia the appeal-tolling doctrine). Under this approach, a statute of limitations does not commence until *all* appeals from the underlying case in which an error allegedly occurred are exhausted. In Nebraska, we have declined to adopt such a broad rule, see *Suzuki v. Holthaus*, 221 Neb. 72, 375 N.W.2d 126 (1985), and it is not necessary to do so here.

Our focus on the timing of an innocent client's knowledge and whether his or her revelation falls either before or after the end of the representation confuses the continuous representation doctrine with the discovery rule and compromises the virtues of the professional attorney-client relationship which the continuous representation rule was designed to preserve. So, as I see it, we should consider abandoning the rigid "prior" test and return to implementing the original purposes of the continuous representation doctrine to enable an attorney the opportunity to resolve the problem or minimize the extent of the injury. *Morrison v. Watkins*, 20 Kan. App. 2d 411, 889 P.2d 140 (1995) (noting that Nebraska's "prior" test does not allow client to work with attorney to correct error). To be thorough, if we persist in rigid application of the "prior" test, we should consider abandoning the doctrine and simply stick to the statute, Neb. Rev. Stat. § 25-222 (Reissue 2016), which provides

the discovery rule exception as the only exception to the statute of limitations.

Here, the appellees continued to represent the Dondlingers on an appeal from their underlying case in an apparent attempt to reverse the consequences of the appellees' alleged act of malpractice. If we do not insist on applying the "prior" test, the 2-year statute of limitations for professional negligence would have accrued on the singular occasion when the appellees informed the Dondlingers of their error, their appellate case was concluded, and the appellees would be closing the file. Without application of the "prior" test, the Dondlingers' legal malpractice case would not be time barred. However, as noted at the outset of this concurrence, applying our current jurisprudence, I concur with the opinion, which concludes that the district court did not err when it determined that the case was time barred and dismissed the Dondlingers' action.

Papik, J., concurring.

I agree with Justice Miller-Lerman that the continuous representation doctrine, as it currently exists in Nebraska, does not appear to further the rationale for having such a rule. I, like Justice Miller-Lerman, understand the primary purposes of a continuous representation rule to be to encourage attorneys to attempt to remedy or mitigate the damages caused by possible errors and to allow clients to rely on their attorneys' efforts to do so without fear that the time to bring a legal malpractice claim is slipping away. See, e.g., *Hiligh v. Sands*, 389 F. Supp. 3d 69 (D.D.C. 2019) (discussing policy justifications for continuous representation rule). I too believe those purposes will rarely, if ever, be served given our rule that the continuous representation doctrine does not apply when the claimant discovers the alleged professional negligence prior to the termination of the professional relationship. See *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013).

Indeed, it would seem that the only scenario in which the continuous representation doctrine could be successfully

invoked under our precedent would be one in which a former client learns of malpractice committed by his or her attorney only *after* the representation has concluded. But, in that scenario, there is no need for a continuous representation rule. The discovery exception in Neb. Rev. Stat. § 25-222 (Reissue 2016) would extend the period in which the client could timely file his or her claim, and there would be no cause to worry about disrupting an already-concluded lawyer-client relationship.

One way out of this thicket would be to, as Justice Miller-Lerman suggests, do away with our rule that the continuous representation rule does not apply when the client discovers the alleged negligence prior to the termination of the relationship. But while that course may lead to a more coherent continuous representation doctrine, I am concerned that the doctrine as a whole is not consistent with the text of the professional negligence statute of limitations. Section 25-222 provides that in the case of professional negligence, the statute of limitations starts running upon the allegedly negligent act or omission of the professional. It provides one and only one exception to that rule—the discovery exception mentioned above.

Ordinarily, when a statute specifically provides for exceptions, we will not recognize others judicially. See *In re Guardianship of Eliza W.*, 304 Neb. 995, 1006, 938 N.W.2d 307, 315 (2020) ("[o]ne of our rules of statutory interpretation provides that when a statute specifically provides for exceptions, items not excluded are covered by the statute"). We appear not to have followed that principle when we recognized the continuous representation doctrine as an additional exception to § 25-222's direction that the statute of limitations starts running upon the allegedly negligent act or omission of the professional.

It is, I recognize, one thing to note that the justification for an established legal doctrine is questionable and quite another to overrule that doctrine. Stare decisis is entitled to great weight in our system. See *Heckman v. Marchio*, 296 Neb. 458,

894 N.W.2d 296 (2017). But one of the main reasons a court might adhere to a legal doctrine notwithstanding its questionable underpinnings is that parties have relied on the existence of that precedent. See *id.* It is difficult for me to believe, however, that anyone has or would organize their behavior based on our version of the continuous representation doctrine. As I have noted, the doctrine, as currently articulated, rarely applies and when it does, it is unnecessary.

If, in fact, there is minimal reliance on the continuous representation doctrine and it cannot be squared with § 25-222, I suggest that any reconsideration of the doctrine should begin with the question of whether, absent legislative action, the doctrine should be recognized at all.

Stacy, J., joins in this concurrence.