IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


RICHARDSON V. OMNI BEHAVIORAL HEALTH


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANGELA RICHARDSON, GUARDIAN AND AS NEXT FRIEND, ON BEHALF OF
WILLIAM E. SEE, JR., A PROTECTED PERSON, APPELLANT,

V.

OMNI BEHAVIORAL HEALTH, APPELLEE.


Filed June 8, 2021.    No. A-20-482.


Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Dan H. Ketcham and Samuel A. Huckle, of Engles, Ketcham, Olson & Keith, P.C., for appellee.


PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Angela Richardson, on behalf of William Earl See, Jr., a protected person, appeals the district court's determination that OMNI Behavioral Health (OMNI) was not liable for injuries sustained by See and argues the district court erred in granting OMNI's motion for summary judgment. For the reasons set forth herein, we affirm in part, and in part reverse, and remand the cause for further proceedings.

## II. STATEMENT OF FACTS

See is a developmentally disabled individual and ward of the State. In order to provide individuals like See with specialized living services, the Department of Health and Human

- 1 -

Services (DHHS) entered into a general service contract with OMNI. The contract provided that OMNI was to provide "Developmental Disability Services" in accordance with the Developmental Disabilities Services Act, the Medical Assistance Act, Title 404 NAC, 175 NAC if operating a Center for the Developmentally Disabled, 471 NAC Chapters 1 through 3, and Title XIX of the Social Security Act. The general service contract required OMNI to:

> Purchase and maintain adequate insurance coverage to cover all [OMNI]'s liabilities. [OMNI] shall file with DHHS, each time [OMNI] returns a signed contract, a current certificate of coverage showing the following kinds of coverage . . . .
>
> . . . .
>
> b. Motor vehicle liability insurance in accordance with the minimums set by state law, and agrees that the State/DHHS will not provide any insurance coverage for vehicles operated by [OMNI].

The contract contained both an integration clause explaining the written contract represented the entire agreement between DHHS and OMNI and an assignment clause noting OMNI shall not assign or transfer any rights or duties under this contract without the written consent of DHHS. The contract also contained a provision allowing OMNI to subcontract "a portion of this contract as allowed by DHHS regulations" and that "OMNI shall ensure that all subcontractors comply with the requirements of this contract and applicable federal, state, county and municipal laws, ordinances, rules, and regulations."

OMNI subsequently entered into a subcontract agreement with James and Jennifer Wall to provide Extended Family Home (EFH) services for See. Under the subcontract, James and Jennifer agreed to provide See with habilitation services, including transportation services, in a family-like setting. James's sister, Martina Wall-Crawford, lived with James and Jennifer and provided some of those services at James and Jennifer's request. (We will collectively refer to the services provided by James, Jennifer, and Wall-Crawford as the "EFH Providers.") Under the subcontract, OMNI's responsibilities were to clarify any terminology, rule, or concept regarding habilitation services; to timely pay the EFH providers; and to rely upon the EFH providers' training, knowledge, and expertise and to utilize their input and feedback in treatment regarding the functioning of the individuals in their home. The EFH providers' responsibilities were to seek clarification for any terminology, rule, or concept regarding habilitation services; consent to background checks for all individuals 12 years old or older living in the home; maintain cleanliness; notify OMNI of a significant change in the home; secure See with functional seatbelts when transporting him; obtain training approved by OMNI; regularly communicate with OMNI regarding See; be available for family team meetings; complete written documentation relevant to the See's care; meet all DHHS requirements; and comply with applicable state and federal statutes and regulations as well as with OMNI policies and procedures. The subcontract specifically provided that:

> EFH provider insists, and OMNI accepts that any and all duties performed by the parties hereunder are performed as and by independent contractors, and that no performance of any duty or act pursuant to this Agreement shall give rise to an employer-employee relationship between the parties. Each party is an independent

contractor and as such will not have any authority to bind or commit the other. No part of this [sub]contract shall be construed to create a joint venture, partnership, fiduciary, or agency relationship between the parties for any purpose.

Finally, the subcontract provided that the EFH provider will "comply with applicable state and federal statutes and regulations and with OMNI Policy and Procedure."

On January 31, 2013, Wall-Crawford picked up See from school and was returning home with him when they were in a one-car accident in Weeping Water, Nebraska. The accident resulted in injuries to See, including the removal of his spleen. At the time of the accident, Wall-Crawford resided at the home of James and Jennifer and had driven See on other occasions prior to the accident.

On January 27, 2017, See's guardian, Angela Richardson, filed a complaint on behalf of See alleging he sustained injuries due to Wall-Crawford's negligent operation of the vehicle and that OMNI was liable for See's damages because Wall-Crawford was OMNI's agent and OMNI negligently entrusted Wall-Crawford with the transportation of See. Richardson also alleged See was the intended third-party beneficiary of OMNI's contract with DHHS because the contract contemplated services provided for disabled individuals such as See and that OMNI subcontracted with James to provide these services including transportation.

In January 2019, OMNI filed a motion for summary judgment but did not include a statement of undisputed facts. At the hearing on the motion, OMNI offered the aforementioned subcontract between OMNI and James and Jennifer; along with deposition excerpts from Morgan Kelly, OMNI's general counsel and treasurer; James; and Wall-Crawford. In opposition to OMNI's motion, Richardson offered the contract between DHHS and OMNI and the full depositions of Kelly, James, and Wall-Crawford.

In his deposition, James stated he received training at OMNI's main office for de-escalation and restraint techniques, CPR, and OMNI's company policies and procedures. James explained OMNI knew Wall-Crawford resided with him and helped to provide EFH care services to See. James stated OMNI required Wall-Crawford to participate in OMNI's training for restraint techniques, CPR, and OMNI's company policies and procedures. OMNI informed James that he was to obtain automobile insurance and homeowners insurance but did not discuss the minimum limits required. James explained that during the year he worked with OMNI, OMNI required him to provide OMNI with a copy of his automobile insurance card for all vehicles listed but never requested the declaration page or a recitation of minimum policy limits he had obtained. James testified that OMNI never discussed with him OMNI's responsibilities under its contract with DHHS. James explained Wall-Crawford needed his consent before driving one of his vehicles. James acknowledged OMNI gave him discretion about the means and methods for transporting See.

Wall-Crawford stated in her deposition that OMNI required her to participate in training pertaining to crisis intervention, CPR, handling prescription medication, and "Therap," a computer system used to input daily information about the interactions EFH providers had with the disabled individuals in their care. Wall-Crawford acknowledged that no one from OMNI spoke with her about OMNI's rules for transportation. Wall-Crawford also acknowledged OMNI did not ask for

proof of insurance or if she was going to be driving any of the disabled individuals. Wall-Crawford explained that once she received training from OMNI, she believed she could transport the disabled individuals. Wall-Crawford stated she had a Nebraska driver's license at the time of the accident but could not recall either being asked to provide, or providing, a copy of her driver's license to OMNI. Wall-Crawford testified she initially assisted See with goal training and entering information into "Therap." Approximately six months later, she began providing transportation services. After the accident, Wall-Crawford continued to assist See with services at home; however, she testified she would no longer transport See in the snow.

Wall-Crawford acknowledged that if James asked for her assistance, she would then help him. When describing this arrangement, Wall-Crawford said it was a family business where she was not paid but she did not have to pay for rent or food. Wall-Crawford recalled that after the accident, she wrote a statement for OMNI detailing the events of the accident.

In its order ruling on the motion for summary judgment, the court noted the chief factor determining whether the EFH providers and Wall-Crawford were employees or independent contractors was that of control. The court determined the EFH providers contracted with OMNI to provide See with a safe and supportive physical and emotional environment, but OMNI did not exert control over the manner by which the Walls were to achieve these outcomes. The court found the facts established that the EFH providers should be considered as independent contractors, not agents. The court then identified the applicable law and noted an employer is not liable for acts or omissions of its independent contractor barring two exceptions: (1) the employer retains control over the contractor's work and (2) the employer has a nondelegable duty to protect others from harm caused by the contractor. In determining whether OMNI was liable for the negligence of the Walls, the court found neither exception was met explaining that (1) there was no evidence OMNI supervised the transportation of See or that it had knowledge of some danger related to See's transportation and (2) OMNI requesting the Walls to drive See for services was not a delegation of an inherently dangerous activity; thus OMNI could not be found vicariously liable for See's injuries. The court continued its findings by stating there was no evidence or question of material fact establishing that the EFH providers maintained inadequate automobile insurance coverage or that OMNI negligently entrusted the vehicle in the accident to Wall-Crawford. The court ultimately granted OMNI's motion for summary judgment.

Subsequently, Richardson filed a motion to alter or amend, or in the alternative, for new trial asking, among other things, that the court address OMNI's nondelegable duty and the issue stemming from the contract between OMNI and DHHS that prevented OMNI from assigning or discharging its duty. The matter was held for hearing in July 2020, but was not made part of the record on appeal. The district court later issued an order denying Richardson's motion to alter or amend or, in the alternative, for new trial. Richardson has timely appealed.

### III. ASSIGNMENTS OF ERROR

Richardson's assignments of error, consolidated and restated, are that the district court erred in granting OMNI's motion for summary judgment because (1) the EFH providers were agents, not independent contractors of OMNI or that, at a minimum, a fact question existed as to this determination which should have precluded summary judgment; (2) the alleged duties

- 4 -

breached here were nondelegable duties; (3) Richardson's negligent entrustment theory of recovery was not encompassed by OMNI's summary judgment motion or its evidence proffered in connection therewith; and (4) OMNI failed to file a statement of undisputed facts. Richardson also contends that the district court erred in overruling Richardson's motion to alter or amend or for a new trial.

## IV. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dondlinger v. Nelson*, 305 Neb. 894, 942 N.W.2d 772 (2020). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id*.

## V. ANALYSIS

In establishing the liability of an employer for the acts of its independent contractor, the Nebraska Supreme Court has stated:

> Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or its servants. Our case law has recognized four exceptions to the general rule. Specifically, a party contracting with an independent contractor can be liable for physical harm caused to another if (1) the contracting party retains control over the contractor's work, (2) the contracting party is in possession and control of premises, (3) a statute or rule imposes a specific duty on the contracting party, or (4) the contractor's work involves special risks or dangers. We often refer to the latter three exceptions as involving nondelegable duties. A nondelegable duty means that a contracting party to an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed.

*Sparks v. M&D Trucking*, 301 Neb. 977, 993-94, 921 N.W.2d 110, 124-25 (2018). Richardson's assignments of error generally aver that the court erred in granting summary judgment in favor of OMNI, the employer of the EFH providers, because the evidence adduced at the summary judgment hearing were sufficient to establish that OMNI was liable for the EFH providers' acts when applying the above-stated rule, or at a minimum, there remained a question of fact which entitled Richardson to a trial. In the alternative, Richardson argues the court erred in dismissing her cause of action for negligent entrustment. We analyze Richardson's specific assignments of error associated with those contentions.

### 1. INDEPENDENT CONTRACTOR VERSUS AGENT

Richardson first contends that the district court erred in granting summary judgment in favor of OMNI because the evidence submitted demonstrates the EFH providers are OMNI's

agents, not independent contractors, or that at a minimum, a question of fact existed with respect to this determination which precluded summary judgment here.

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020). The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Dondlinger v. Nelson*, 305 Neb. 894, 942 N.W.2d 772 (2020). If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* The primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled. *Id*.

> Ordinarily, a party's status as an employee or an independent contractor is a question of fact. However, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. By stating "where the inference is clear," this court means that there can be no dispute as to pertinent facts pertaining to the contract and the relationship of the parties involved and only one reasonable inference can be drawn therefrom.

*Sparks v. M&D Trucking*, 301 Neb. 977, 988, 921 N.W.2d 110, 121 (2018).

Classifying a relationship as one of independent contractor versus agent requires consideration of the following 10 factors: (1) the extent of control which, by the agreement, the potential employer may exercise over the details of the work; (2) whether the one potentially employed is engaged in a distinct occupation or business; (3) the type of occupation, with reference to whether, in the locality, the work is usually done under the direction of the potential employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the potential employer or the one potentially employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one potentially employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the potential employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the potential employer is or is not in business. *Sparks v. M&D Trucking, supra*.

The chief factor in identifying an independent contractor relationship is the extent of control exerted by the potential employer. *Id*. In examining the extent of control, it is important to differentiate control over the means and methods of the assignment from control over the end product of the work to be performed. *Id*. An independent contractor undertakes work subject to the employer's will or control only as to the result of the work and not as to the means or methods used. *Id*. "Even the party contracting with an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms." *Id*. at 989, 921 N.W.2d at 122.

To establish its prime facie case, OMNI offered the subcontract between itself and the EFH providers, along with excerpts of depositions from persons involved in the administration of that subcontract. Under the subcontract, OMNI's responsibilities were limited to clarifying any terminology, rule, or concept regarding habilitation services that the EFH providers requested; providing timely payment to the EFH providers; and relying upon the EFH providers' training, knowledge, and expertise and to utilize their input and feedback in treatment regarding the functioning of the individuals in their home. Conversely, the EFH providers agreed to provide Developmental Disability Services under the aforementioned statutes, rules, and regulations while seeking clarification for any terminology, rule, or concept regarding habilitation services; consenting to background checks for all individuals 12 years old or older living in the home; maintaining cleanliness; notifying OMNI of significant change in the home; securing See with functional seatbelts when transporting him; obtaining training approved by OMNI; regularly communicating with OMNI regarding See; being available for family team meetings; completing written documentation relevant to See's care; meeting all DHHS requirements; and complying with applicable state and federal statutes and regulations as well as with OMNI's policy and procedure. The subcontract explicitly provided that the relationship contemplated between OMNI and the EFH providers was that of employer and independent contractor. Further, in order to establish that the parties conformed their dealings to the terms of the subcontract, OMNI provided excerpts from depositions of individuals associated with administering the subcontract, which demonstrated those individuals followed the subcontract in carrying out their duties and responsibilities described in accordance with the written terms within it. In response, Richardson offered the general contract between DHHS and OMNI along with the full depositions of those individuals from whom OMNI had offered excerpts. That general contract separately outlined the terms governing DHHS and OMNI's duties and obligations to each other and explicitly contained a provision which provided that OMNI reserved the right to subcontract out portions of that contract as allowed by DHHS regulations.

After reviewing the terms of the contracts and depositions offered at the summary judgment hearing, we find the evidence does not support Richardson's contention that OMNI created an agency relationship between OMNI and the EFH providers. A review of these contracts clearly establishes that, in retaining the EFH providers to provide habilitative services for See, OMNI did not exert control over the means and methods by which EFH providers were to provide said habilitative services, and that OMNI's responsibilities were merely limited to providing clarification of terminology and rules, in providing timely payment, and providing some limited training in connection with restraint techniques, CPR, OMNI's policies and procedures, and certain handling of medication and the parties' information database.

Moreover, the deposition testimony offered by the parties affirmatively established that the EFH providers supplied the instrumentalities, tools, and the place of work for the care of See, including but not limited to transportation services; that OMNI granted the EFH providers full discretion in the means and methods of transporting See; and that by the explicit terms of the subcontract, the parties acknowledged they were forming an independent contractor relationship. Further, the contract between DHHS and OMNI explicitly provided that OMNI had the right to

subcontract its obligations and Richardson fails to identify any DHHS rule or regulation which prohibited this arrangement.

In sum, we conclude that during the summary judgment hearing, OMNI established a prima facie case that the EFH providers were retained as independent contractors to OMNI. The burden then shifted to Richardson to rebut that claim which she failed to do. Accordingly, we hold the court did not err in finding that, on this record, the inference is clear that no master and servant relationship existed between OMNI and the EFH providers. The district court was correct in finding that the EFH providers were independent contractors as employed by OMNI as a matter of law. Richardson's first assignment of error fails.

## 2. NONDELEGABLE DUTY

Richardson next argues that even if the EFH providers were independent contractors of OMNI, the duties breached here were nondelegable duties making it error to dismiss OMNI who remained vicariously responsible for the EFH providers' acts. To that end, Richardson argues:

> In this case, [OMNI] was literally paid to transport . . . See. By virtue of [OMNI] accepting that contractual undertaking to provide transportation of . . . See, it assumed a nondelegable duty to prevent and protect . . . See from harm, including negligence of any persons or contractors that [OMNI] utilized to carry out its services.

Brief for appellant at 22. Richardson then separately argues in connection with this assignment:

> In the present case, [OMNI's] contract with [DHHS] required [OMNI] to provide insurance and to provide safe transportation of the individuals it contracted to serve. *See* "Scope of Services" at page 2-3 of [the OMNI] Contract, including responsibility to provide "motor vehicle liability insurance[."] [DHHS'] contract further prohibited assignment of any duties or responsibilities of [OMNI] to any contractor, without [DHHS'] written consent (which is not present in this case). (*See* Section "D" on page 4 prohibiting assignment). In other words, [OMNI] undertook both a duty of care and to provide insurance in the event of any mishap in transportation.

Brief for appellant at 29.

As we mentioned before, although an employer of an independent contractor is generally not vicariously liable for the acts of the independent contractor, liability is imposed when the duty breached by the independent contractor was nondelegable. Richardson specifically argues here that OMNI's contractual undertaking to obtain automobile liability insurance at certain minimum limits and its contractual duty to provide transportation services were nondelegable duties and that the negligence of the EFH providers should be imputed to OMNI.

Our case law recognizes the following three duties as nondelegable: (1) the contracting party is in possession and control of premises, (2) a statute or rule imposes a specific duty on the contracting party, and (3) the contractor's work involves special risks or dangers. *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018). Applying those criterion here, we must determine, as Richardson argues, whether OMNI's contractually assumed obligations to provide

transportation services for See or to procure automobile liability insurance in connection with those services fits into any such criterion. We hold that it does not.

In relation to OMNI's obligation to provide transportation services, Richardson argues such services are controlled by regulation, or in the alternative, transportation services involve a special risk or danger either of which render those services inherently nondelegable. We examine those arguments independently.

Richardson's regulatory argument is grounded in 404 Neb. Admin. Code, ch. 4, § 006, which provides:

> When the provider transports individuals, the provider must ensure that all individuals are transported in a safe and comfortable manner that meets the needs of each individual. The provider must ensure that:
>
> 1. Vehicles are adapted to meet the needs of all individuals served. Individuals must not be denied transportation services due to the lack of adaptation of vehicles;
>
> 2. Adequate measures are taken to provide a sufficient number of staff in the vehicle to ensure safety and to meet the needs of each individual being transported; and
>
> 3. That each person transporting individuals served:
>
> a. Has a valid driver's license with the appropriate class code;
>
> b. Has knowledge of state and local traffic rules;
>
> c. Is capable of assisting individuals in and out of vehicles and to and from parking places, when required; and
>
> d. Has received training in first aid, CPR, and in meeting the needs of the specific individuals for whom transportation is provided.

Richardson argues that this regulation constitutes a specific statute or rule imposing a specific duty of care upon OMNI making OMNI vicariously liable for Wall-Crawford's alleged acts of negligence, which resulted in injury to See. We disagree. Although § 006 requires "providers" driving disabled individuals to ensure such individuals are transported in a "safe and comfortable manner that meets the needs of each individual" with corresponding requirements relating thereto, we do not read this rule to ascribe a nondelegable duty on OMNI to make sure all such drivers of such individuals operate vehicles on the road in a nonnegligent manner. Assuming without deciding that the word "provider" in § 006 applies to OMNI, we do not read that regulation as a requirement that "providers" ensure the safety of all disabled individuals while being transported. More specifically, although this rule addresses adapting vehicles to meet the needs of the individuals served, providing adequate measures to ensure safety "in the vehicle" and to ensure persons transporting individuals meet certain criterion, we do not read the rule as placing the responsibility of safe operation of the vehicle on the provider. In short, Richardson argues that § 006 renders "providers" vicariously liable for the acts of its independent contractors who negligently operate vehicles while transporting individuals with developmental disabilities. We hold it does not accomplish that purpose. As such, Richardson's argument that OMNI's duty of care in relation to Wall-Crawford's alleged act of negligence was nondelegable fails.

As to Richardson's argument that transportation services pose a special risk or danger, which makes them inherently nondelegable, we quickly dispense with that argument as we can

find no Nebraska Supreme Court precedent which establishes this proposed rule of law and Richardson cites us to none. Accordingly, Richardson's argument that OMNI's duty to provide for safe transportation of See while operating the vehicle was nondelegable fails.

Richardson's argument, that OMNI's contractual obligation to provide automobile liability insurance was nondelegable, suffers a similar fate. Richardson appears to argue that because OMNI was contractually required to procure automobile liability insurance at minimum policy limits ascribed by the State of Nebraska, it was likewise contractually obligated to make sure its subcontractors purchased the same insurance with the same coverage limits obtained by OMNI thereby rendering this obligation nondelegable. First, the contract between DHHS and OMNI requires only that OMNI procure automobile and other liability insurance at State-required rates. And although the contract between DHHS and OMNI specifically allows OMNI to subcontract obligations under the contract not prohibited by law, it does not require those subcontractors to likewise procure insurance, does not require OMNI to ensure that its subcontractors are insured, and does not require OMNI to name its subcontractor as an additional insured on its policy. In short, on the face of the contract, OMNI was not obligated by contract to ensure that its subcontractors procured certain insurance or established limits of insurance as Richardson argues.

Further, Richardson fails to point us to any statute or rule which required OMNI to ensure that its subcontractors were insured in connection with this habilitative service contract or which renders OMNI's insurance obligations nondelegable. For the sake of clarity, the record reveals the EFH providers did procure their own automobile insurance in accordance with legal limits established by law. In short, the district court did not err in granting summary judgment on the basis that the transportation or insurance contract obligations between DHHS and OMNI were nondelegable to the EFH providers.

### 3. NEGLIGENT ENTRUSTMENT AND TRAINING

Richardson next argues that as to her separate causes of action for negligent entrustment by OMNI, OMNI never raised the issue in connection with its motion for summary judgment or with a statement of annotated facts so as to establish that those claims were being challenged in connection with OMNI's motion. As such, Richardson argues "she had no obligation to adduce any evidence and Omni never sustained its burden." Brief for appellant at 43. Richardson separately makes this argument in connection with the next assignment governing OMNI's failure to provide an index of evidence or statement of undisputed facts in connection with her motion.

As we stated before, the party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Dondlinger v. Nelson*, 305 Neb. 894, 942 N.W.2d 772 (2020). If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

Here, as stated in OMNI's motion, OMNI moved for summary judgment "for the reason that OMNI . . . [sub]contracted with an EFH Provider to facilitate the care of its clients, and does not retain any control over the day-to-day monitoring of the EFH Provider or the client, as a result of such, [OMNI] is entitled to summary judgment as a matter of law." On the face of that motion,

- 10 -

OMNI appears to be contending that the basis of its motion for summary judgment is that its relationship to the EFH providers was that of employer and independent contractor, and that under those circumstances, OMNI cannot be vicariously responsible for the EFH providers' negligent acts. The motion does not appear to separately challenge Richardson's direct liability claim that OMNI negligently entrusted the subcontract to the EFH providers. Moreover, as more thoroughly discussed in the next section, OMNI failed to provide an Index of Evidence or Statement of Undisputed Facts, which in part, is designed to serve both the trial and appellate courts by exposing the precise claims being raised by the parties. These failures by OMNI are significant to Richardson's argument here. In sum, Richardson argues that she did not understand OMNI to be challenging Richardson's direct liability claim at the summary judgment proceeding, and that OMNI failed to offer evidence at the proceeding which established a prima facie case as to the direct liability claim or which shifted the burden to Richardson to oppose such evidence on the subject. We agree.

Although OMNI clearly was contesting the vicarious liability claims made by Richardson at the summary judgment hearing, it did not appear to raise a challenge to the direct liability claim of negligent entrustment by its motion and failed to clarify whether it was raising such a claim by not complying with Neb. R. Ct. § 6-1526 (rev. 2018). Further, although OMNI offered its subcontract between the EFH providers and OMNI and certain deposition excerpts discussed before, we cannot say this collection of evidence made a prima facie case opposing Richardson's direct liability claim or shifted the burden onto Richardson to rebut them. Under these circumstances, we hold the court erred in granting summary judgment and dismissing Richardson's direct liability claim of negligent entrustment as this matter simply was not made part of this summary judgment hearing.

### 4. FAILURE TO FILE STATEMENT OF UNDISPUTED FACTS

Richardson's final assignment of error is that the district court erred in granting OMNI's motion for summary judgment because OMNI failed to file a statement of undisputed facts.

Neb. Ct. R. § 6-1526 provides:

(A) Moving Party's Materials in Support of Motion. When a motion for summary judgment or partial summary judgment is filed, the moving party must simultaneously file with the clerk and serve on all parties of record:

(1) an Evidence Index in Support listing all evidence to be offered in support of the motion for summary judgment; and

(2) an Annotated Statement of Undisputed Facts setting forth concise, numbered paragraphs reciting each proposed material fact as to which the moving party contends there is no genuine dispute, annotated by pinpoint citation to the supporting evidence in the Evidence Index in Support.

Failure to submit such a Statement may constitute grounds for denial of the motion.

(B) Opposing Party's Materials in Opposition. Each party opposing a motion for summary judgment or partial summary judgment must file with the clerk and serve on all parties of record:

- 11 -

(1) an Evidence Index in Opposition listing all evidence to be offered in opposition to the motion for summary judgment; and

(2) an Annotated Statement of Disputed Facts setting forth concise, numbered paragraphs reciting each proposed material fact of the moving party as to which the opposing party contends there is a genuine dispute, annotated by pinpoint citation to the supporting evidence in the Evidence Index in Opposition.

Failure to submit such a Statement may constitute grounds for sustaining the motion.

(C) For purposes of this rule, where competing motions are filed, a party shall be considered as the moving party regarding a motion or motions asserted by that party and as an opposing party regarding a motion or motions asserted by another party.

(D) The assigned judge is expected to schedule deadlines for compliance with this rule and the summary judgment statutes so as to ensure a fair opportunity for all parties to present their evidence. The judge may, in the judge's discretion, extend any deadline for compliance with any requirement under this rule.

In *Bohling v. Bohling*, 304 Neb. 968, 977-78, 937 N.W.2d 855, 862 (2020), the Nebraska Supreme Court recently addressed parties' obligations relating to filing statements of undisputed facts:

In 2017, the Legislature amended the summary judgment statutes to "require[ ] a party to provide citations to the record to support its assertion that a fact cannot be or is genuinely disputed." It did so by amending § 25-1332. In response, we adopted § 6-1526 in 2018. This rule provides specific procedures to carry out the purpose of the statutory amendment.

In order to accomplish the legislative goal of judicial economy, § 6-1526 was crafted for three reasons. First, it benefits parties by making the parties' respective claims as to undisputed or disputed facts clear and precise. Second, it serves both trial and appellate courts by exposing the precise claims of the parties. The parties' briefs are not an effective substitute for an evidence index and an annotated statement of undisputed or disputed facts. A judge should not have to scour through a party's brief to identify factual claims that are intermixed with legal arguments. Third, it was adopted to focus the parties and the court on the specific factual contentions.

Trial courts should have some discretion to adapt procedures to the needs of a particular case, and an appellate court will not intervene except where the discretion is abused. But trial courts should not condone a party's failure to follow § 6-1526 merely because the party finds it inconvenient or unfamiliar. There is a systemic value to the prompt and inexpensive resolution of disputes. Section 6-1526 should not be lightly ignored. We encourage district courts to set deadlines in compliance with the rule and require parties to submit necessary materials.

The Nebraska Supreme Court's statement in *Bohling, supra*, makes it clear that trial courts should have some discretion to adapt procedures to the needs of a particular case, and that appellate courts will not intervene except where that discretion is abused. Here, in connection with

Richardson's first two assignments of error, we find that the court did not abuse its discretion in granting summary judgment notwithstanding OMNI's failure to comply with § 6-1526. As to those issues, the issues being raised and contested by OMNI were made clear by its motion and we find no abuse of discretion in the court allowing OMNI to proceed with its motion notwithstanding its failure to comply with the summary judgment rule. We reach a different conclusion as to the issue raised in Richardson's third assignment of error.

As we stated before, because we hold that OMNI failed to raise a challenge to Richardson's direct liability claims in its motion, we find the court did abuse its discretion in dismissing the direct liability claims without providing an annotated statement of undisputed facts. Having failed to raise the issue in its motion, it was incumbent upon OMNI to issue such a statement so as to apprise the trial court and Richardson that those matters were being challenged, if they were. Having failed to provide that statement which would have clearly exposed the precise claim being challenged, we find that said failure, when coupled with the matters we raised in the last section, resulted in reversible error governing that aspect of the court's order where it dismissed Richardson's direct claim of negligent entrustment.

## 5. DENIAL OF POSTTRIAL MOTIONS

Richardson also contends that the district court erred in overruling Richardson's motion to alter or amend or for new trial. We previously determined the court properly granted summary judgment on the issue of vicarious liability, but abused its discretion in also granting summary judgment on negligent entrustment. Because we remand this action to the district court to proceed on the negligent entrustment issue, we do not address Richardson's argument related to her motion to alter or amend or for new trial. See *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it). This assigned error fails.

## VI. CONCLUSION

For the reasons stated above, we affirm the district court's order dismissing Richardson's vicarious liability claims against OMNI, but reverse that portion of the order granting summary judgment to OMNI governing Richardson's claim for negligent entrustment, and remand this cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.